## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

STEVE MANIACI, *on behalf of himself and others similarly situated*,

                        Plaintiffs,

v.

ORTHOTECH, LLC,

                        Defendant.

Case No. 2:25-cv-11138-RJW-APP

Hon. Robert J. White
Hon. Anthony P. Patti

**Oral Argument Requested**

## DEFENDANT ORTHOTECH, LLC'S
## MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

Defendant OrthoTech, LLC ("OrthoTech), by and through its attorneys respectfully moves this Court to dismiss Plaintiff Steve Maniaci's Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff asserts a single claim under the Telephone Consumer Protection Act ("TCPA), 47 U.S.C. § 227, *et seq.*—specifically, a claim pursuant to 47 U.S.C. § 227(c)(5) for the alleged receipt of text messages despite registering on the national do-not-call registry ("DNC"). This claim fails as a matter of law because it does not apply to cellular telephones. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

Pursuant to Local Rule 7.1(a), the undersigned certifies that counsel for Defendant conferred with counsel for Plaintiff by telephone on July 15, 2025. Counsel for Defendant explained the legal basis for the instant Motion, but did not

i

obtain concurrence in the relief sought.  Plaintiff opposes the relief sought herein, necessitating the filing of this Motion.

WHEREFORE, for these reasons, and for the reasons set forth in the Brief in Support, which is incorporated herein by reference, and for such reasons as may be presented to the Court prior to its ruling hereon, OrthoTech respectfully requests that this Court grant this Motion in its entirety and dismiss the Complaint with prejudice.

Dated: July 22, 2025                    Respectfully submitted,

                                        */s/ George B. Donnini*
                                        David F. DuMouchel (P-25658)
                                        George B. Donnini (P66793)
                                        **BUTEL LONG, P.C.**
                                        201 West Big Beaver, Suite1200
                                        Troy, MI 48084
                                        Telephone 248.258.1616
                                        Email: dumouchd@butzel.com
                                                donnini@butzel.com


                                        /s/ *Mark S. Eisen*
                                        Mark S. Eisen
                                        meisen@beneschlaw.com
                                        **BENESCH, FRIEDLANDER,**
                                        **COPLAN & ARONOFF LLP**
                                        71 S. Wacker Drive, Suite 1600
                                        Chicago, Illinois 60606
                                        Telephone: (312) 212-4949
                                        Facsimile: (312) 767-9192

                                        *Counsel for OrthoTech, LLC*

27270168 v4

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................3

    I.     PLAINTIFF'S ALLEGATIONS............................................................3

    II.    REGULATORY BACKGROUND. ......................................................3

LEGAL STANDARD...........................................................................................5

ARGUMENT .....................................................................................................5

    I.     PLAINTIFF'S CLAIM SHOULD BE DISMISSED BECAUSE HE RECIEVED A TEXT MESSAGE ON A CELLULAR PHONE.............................................................................5

          A.    This Court Must Interpret the TCPA as Written in 1991.............................................................................6

               1.    The term "residential telephone subscriber", as written in 1991, plainly refers to a subscriber to a landline telephone. ...................................7

                    a.    Basic rules of statutory interpretation establish that "residential" does not include "cellular"....................................7

                    b.    A historical analysis likewise supports that "residential telephone subscriber" refers only to landlines. .......................10

               2.    This Court should follow those authorities interpreting the provision at hand as applying only to residential lines....................................14

    II.    PLAINTIFF'S AUTHORITY SHOULD BE DISREGARDED.................................................................................16

CONCLUSION ................................................................................................21

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACA Int'l v. FCC*,
    885 F.3d 687 (D.C. Cir. 2018)...............................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................5

*Bais Yaakov of Spring Valley v. Fed. Commc'ns Comm'n*,
    852 F.3d 1078 (D.C. Cir. 2017).......................................................9, 21

*Barr v. Am. Ass'n of Pol. Consultants, Inc*,
    591 U.S. 610 (2020) (Breyer, J. concurring) .......................................9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 554 (2007)..............................................................................5

*Buxton v. Full Sail, LLC*,
    No. 6:24-CV-747-JSS-DCI, 2024 WL 5057222 (M.D. Fla. Dec.
    10, 2024) ............................................................................................16

*Cacho v. McCarthy & Kelly LLP*,
    No. 23-CV-11157, 2024 WL 3293628 (S.D.N.Y. July 3, 2024)............17, 18, 19

*Callier v. GreenSky, Inc.*,
    No. 20-00304, 2021 WL 2688622 (W.D. Tex. May 10, 2021).........................16

*Matter of Cargo Airline Ass'n Petition for Expedited Declaratory
    Ruling Rules & Reguls. Implementing the Tel. Cons. Prot. Act of
    1991*,
    29 F.C.C. Rcd. 3432 (2014)...............................................................10

*Charvat v. GVN Michigan, Inc.*,
    561 F.3d 623 (6th Cir. 2009) .............................................................14

*Charvat v. NMP, LLC*,
    656 F.3d 440 (6th Cir. 2011) .........................................................14, 15

*Cunningham v. Health Plan Intermediaries Holdings*,
　　No. 18-00518, 2021 WL 1946645 (M.D. Tenn. May 14, 2021) .......................16

*Cunningham v. Rapid Response Monitoring Services,* 251 F. Supp. 3d
　　1187 (M.D. Tenn. 2017) ....................................................................................14

*Facebook, Inc. v. Duguid*,
　　592 U.S. 395 (2021)...................................................................................13, 20

*Gaker v. Q3M Ins. Sols.*,
　　No. 22-00296, 2023 WL 2472649 (W.D.N.C. Feb. 8, 2023)............................16

*Ins. Mktg. Coal. Ltd. v. Fed. Commc'ns Comm'n*,
　　127 F.4th 303 (11th Cir. 2025) ..........................................................................21

*Izor v. Abacus Data Sys., Inc.*,
　　No. 19-cv-01057, 2019 WL 3555110 (N.D. Cal. Aug. 5, 2019).......................16

*Jackson v. Direct Bldg. Supplies LLC*,
　　No. 4:23-CV-01569, 2024 WL 184449 (M.D. Pa. Jan. 17, 2024) .........17, 18, 19

*LaGuardia v. Designer Brands Inc.*,
　　No. 20-cv-2311, 2021 WL 4125471 (S.D. Ohio Sept. 9, 2021)........................16

*Lee v. Mortg. Ctr., LLC*,
　　No. 14-CV-14147, 2015 WL 12681314 (E.D. Mich. May 22,
　　2015) ....................................................................................................................9

*Lirones v. Leaf Home Water Sols., LLC*,
　　No. 5:23-CV-02087, 2024 WL 4198134 (N.D. Ohio Sept. 16,
　　2024) ..................................................................................................17, 18, 19

*Loper Bright Enterp. v. Raimondo*,
　　603 U.S. 369 (2024)..................................................................................*passim*

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
　　No. 23-1226, 2025 WL 1716136 (U.S. June 20, 2025)..............................*passim*

*Norris v. Stanley*,
　　73 F.4th 431 (6th Cir. 2023) ................................................................................5

*Shelton v. Advance Funding, LLC*,
　　378 F. Supp 3d 356 (E.D. Pa. May 8, 2019) .....................................................12

*Smith v. Truman Rd. Dev., LLC*,
    No. 18-cv-00670, 2020 WL 2044730 (W.D. Mo. Apr. 28, 2020),
    *aff'd sub nom.* 29 F.4th 391 (8th Cir. 2022) ....................................................16

*Stevens-Bratton v. TruGreen, Inc.*,
    437 F. Supp. 3d 648 (W.D. Tenn. 2020) .........................................................5, 16

*Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*,
    603 F. Supp. 3d 1334 (S.D. Fla. 2022) ....................................................9, 15, 21

*United States v. Edington*,
    992 F.3d 554 (6th Cir. 2021) ..............................................................................8

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*,
    586 U.S. 9 (2018)...............................................................................................19

**Statutes**

47 U.S.C. § 227(a) ....................................................................................................8

47 U.S.C. § 227(b) ................................................................................7, 8, 17, 19

47 U.S.C. § 227(c)(1)......................................................................................*passim*

**Other Authorities**

47 C.F.R. § 64.1200(a)..............................................................................................8

47 C.F.R. § 64.1200(c)....................................................................................1, 3, 4

47 C.F.R. § 64.1200(d) ...........................................................................................14

47 C.F.R. § 64.1200(e)..............................................................................................4

*CGB Seeks Comment on Petition for Expedited Declaratory Ruling & Exemption*, 29 F.C.C. Rcd. 15267 n.7 (2014) ....................................................10

H.R. REP. 102-317, 6 .............................................................................................12

*In Re Rules & Regs. Implementing the TCPA of 1991*,
    18 F.C.C. Rcd. 14014 (2003) (hereinafter the "2003 Order" or
    "Residential Subscriber Guidance")...............................................................4, 12

27270168 v4

*In Re Rules & Reguls. Implementing Tel. Consumer Prot. Act of 1991*,
  17 F.C.C. Rcd. 17459 (2002)................................................................12

*In the Matter of Rules & Reguls. Implementing the Tel. Consumer
  Prot. Act of 1991*,
  27 F.C.C. Rcd. 1830 (2012)................................................................9

*In the Matter of Rules & Reguls. Implementing the Tel. Consumer
  Prot. Act of 1991*,
  7 F.C.C. Rcd. 8752 (1992)................................................................11

Rule 12(b)(6)................................................................5

S. REP. 102-178, 1................................................................11

S. REP. 102-178, 7................................................................18

*Tel. Consumer Prot. Act Tel. Solicitations, Autodialed & Artificial or
  Prerecorded Voice Message Tel. Calls, & the Use of Facsimile
  Machines*,
  8 F.C.C. Rcd. 506 (1993)................................................................11

27270168 v4

## <u>ISSUES PRESENTED</u>

Whether Plaintiff has adequately alleged that the telephonic outreach at issue was received by a "residential telephone subscriber" such that he can plausibly allege a claim under 47 U.S.C. § 227(c)(5) via 47 C.F.R. § 64.1200(c)(2).   OrthoTech answers: "No".

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

47 U.S.C. § 227(c)(1).

47 C.F.R. § 64.1200(c).

*ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018).

*Charvat v. GVN Michigan, Inc*., 561 F.3d 623 (6th Cir. 2009).

*Charvat v. NMP, LLC*, 656 F.3d 440 (6th Cir. 2011).

*Chennette v. Porch.com*, 50 F.4th 1217 (9th Cir. 2022).

*Cunningham v. Rapid Response Monitoring Services,* 251 F. Supp. 3d 1187 (M.D. Tenn. 2017).

*Lee v. Mortg. Ctr., LLC*, No. 14-CV-14147, 2015 WL 12681314 (E.D. Mich. May 22, 2015)

*Loper Bright Enterp. v. Raimondo,* 603 U.S. 369 (2024).

*McLaughlin Chiropractic v. McKesson Corporation*, No. 23-1226, 2025 WL 1716136, at *2 (U.S. June 20, 2025).

*Shelton v. Advance Funding, LLC*, 378 F. Supp 3d 356 (E.D. Pa. May 8, 2019).

*Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.,* 603 F. Supp. 3d 1334 (S.D. Fla. 2022).

*United States v. Edington*, 992 F.3d 554 (6th Cir. 2021).

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

STEVE MANIACI, *on behalf of himself and others similarly situated*,

Plaintiffs,

v.

ORTHOTECH, LLC,

Defendant.

Case No. 2:25-cv-11138-RJW-APP

Hon. Robert J. White
Hon. Anthony P. Patti

**Oral Argument Requested**

## DEFENDANT ORTHOTECH, LLC'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

Defendant OrthoTech, LLC ("OrthoTech"), by and through its attorneys, respectfully submits this Brief in Support of its Motion to Dismiss Plaintiff's Class Action Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6).  In support thereof, OrthoTech states as follows:

## INTRODUCTION

Plaintiff brings a putative class action against OrthoTech under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5), contending he received text messages on his cellular telephone from OrthoTech despite that he is on the national do not call list.  Plaintiff thus asserts one claim under 47 U.S.C. § 227(c)(5) and through the TCPA's corresponding regulation 47 C.F.R. §§ 64.1200(c)(2) (the do-not-call or "DNC" registry regulations).

1

The problem with Plaintiff's claim, however, is that the statutory and regulatory provisions at issue apply exclusively and unambiguously to *residential* subscribers. *See* 47 U.S.C. § 227(c)(1) & (3) (allowing FCC to issue do-not-call regulations as it relates to residential telephone numbers). Plaintiff alleges he received the messages at issue on his *cell* phone. The plain language of the TCPA and its history indicate that the term "residential telephone subscriber" as written in 1991 *does not* apply to cellular telephones.

While the Sixth Circuit has not directly addressed this issue, Plaintiff may argue that many trial courts have determined the provisions at issue can apply to cell phones. However, this authority largely predates recent critical Supreme Court decisions, including *Loper Bright v. Raimondo* (overturning *Chevron*) and *McLaughlin Chiropractic v. McKesson* (determining that FCC interpretations of the TCPA are not controlling), and thus unduly defers to or finds controlling the view of the FCC that residential telephone subscribers can include cell phones. Deference to the FCC is no longer warranted, nor is the FCC's interpretation controlling. Plaintiff may also point to more recent authority, which authority improperly relies on modern day policy rationales and fails to adhere to the Supreme Court's instruction in *Loper Bright* to interpret the TCPA as written *when it was enacted*.

This case should be dismissed with prejudice. Plaintiff simply cannot avail himself of the claim at issue, which is evident from the face of Plaintiff's Complaint.

27270168 v4

## BACKGROUND

### I.   PLAINTIFF'S ALLEGATIONS.

Plaintiff initiated this putative class action on April 21, 2025.  (Dkt. 1.)
Plaintiff contends, in sum, that he received text messages from OrthoTech without
his consent despite that he registered on the national do not call registry.  (*Id.* ¶¶ 11-
16.)  Plaintiff alleges that the phone number at issue, beginning with (512)-925-
XXXX is his *cellular* telephone number.  (*Id.* ¶ 23.)

Plaintiff asserts one claim under 47 U.S.C. § 227(c)(5), through the
corresponding regulation found at 47 C.F.R. §§ 64.1200(c)(2).  Plaintiff also seeks
to represent a putative nationwide class, improperly and remarkably reaching back
to 2021 (three years prior to OrthoTech's formation), of persons called or texted by
or on behalf of OrthoTech despite being on the national do-not-call registry for at
least 30 days.  (*Id.* ¶ 19.)

### II.   REGULATORY BACKGROUND.

The TCPA was enacted in 1991 and, in relevant part, allows the FCC to issue
regulations "to protect ***residential telephone subscribers'*** privacy rights to avoid
receiving telephone solicitations to which they object."  47 U.S.C. § 227(c)(1)
(emphasis added).  The TCPA also authorizes the FCC to "require the establishment
and operation of a single national database to compile a list of telephone numbers of
***residential subscribers*** who object to receiving telephone solicitations."  47 U.S.C.

§ 227(c)(3) (emphasis added).  Claims to enforce the regulations issued pursuant to these provisions are brought under 47 U.S.C. § 227(c)(5).

Through this authority, the FCC issued regulations prohibiting telephone solicitations to: "A ***residential telephone subscriber*** who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations. . . ."  47 C.F.R. § 64.1200(c) (emphasis added).

The FCC indicated—prior to *Loper Bright* and *McLaughlin Chiropractic*, and contrary to the plain language of the TCPA—that 47 C.F.R. § 64.1200(c) can apply to cell phones.  Specifically, the FCC issued a regulation stating that "[t]he rules set forth in paragraph (c) . . . are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order," issued in 2003.  47 C.F.R. § 64.1200(e).  The referenced Order states:

> Therefore, we conclude that wireless subscribers may participate in the national do-not-call list. . . .  [W]e will presume wireless subscribers who ask to be put on the national do-not-call list to be "residential subscribers."  Such a presumption, however, may require a complaining wireless subscriber to provide further proof of the validity of that presumption should we need to take enforcement action.

4

*In Re Rules & Regs. Implementing the TCPA of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) (hereinafter the "2003 Order" or "Residential Subscriber Guidance").[1]

## LEGAL STANDARD

A complaint fails under Rule 12(b)(6) if it does not provide enough factual information to "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555, 570 (2007). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a court accepts well-pleaded facts as true, it "need not accept as true legal conclusions or unwarranted factual inferences." *Norris v. Stanley*, 73 F.4th 431, 435 (6th Cir. 2023) (internal quotations and citation omitted).

## ARGUMENT

## I.   PLAINTIFF'S CLAIM SHOULD BE DISMISSED BECAUSE HE RECEIVED A TEXT MESSAGE ON A CELLULAR PHONE

Plaintiff's claim fails as a matter of law because his sole claim is that OrthoTech sent text messages to his cellular telephone. Section 227(c), however, does not afford a private right of action to cell phone users.

---

[1]     Even if this Court finds for Plaintiff and disregards the recent rulings of *Loper Bright* and *McLaughlin Chiropractic*, Plaintiff still bears the burden of proving that he in fact uses his cellular telephone for residential purposes. *See, e.g.*, *Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648, 656 (W.D. Tenn. 2020) ("A plaintiff, however, must put forth evidence establishing that her cellular telephone is used for residential purposes.").

5

## A.    This Court Must Interpret the TCPA as Written in 1991

Last term, in *Loper Bright Enterprises v. Raimondo*, the Supreme Court eliminated *Chevron* deference. *See* 603 U.S. 369 (2024).  This ruling returned courts to their traditional function "to decide whether the law means what the agency says." *Id.* at 392.  Courts must utilize "the reading the court would have reached if no agency were involved."  *Id.* at 400 (internal quotations and citation omitted). Critically, "every statute's meaning is fixed at the time of enactment."  *Id.* (internal quotations and citation omitted).  The provision at hand must thus be interpreted to reach the "best" interpretation, as it was written in 1991, without influence by the modern-day transition from landline telephones to cellular telephones.

And just a few weeks ago, in *McLaughlin Chiropractic v. McKesson Corporation*, the Supreme Court evaluated whether, under the Hobbs Act, trial courts are bound by FCC interpretations of the TCPA.  *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, No. 23-1226, 2025 WL 1716136, at *2 (U.S. June 20, 2025).  The answer to this question was an unambiguous "no".  The Court held trial courts "[are] not bound by the FCC's interpretation of the TCPA," but rather "should interpret the statute as courts traditionally do under ordinary principles of statutory interpretation . . . ."  *Id.* at *13.

The sum total of *Loper Bright* and *McLaughlin Chiropractic* is that courts must engage their traditional tools of statutory interpretation and reach the best interpretation of the TCPA as it was written in 1991.

1.    **The term "residential telephone subscriber", as written in 1991, plainly refers to a subscriber to a landline telephone.**

As detailed above, 47 U.S.C. § 227(c) only permits the FCC to issue regulations concerning "residential telephone subscribers". 47 U.S.C. § 227(c)(1). The structure of the TCPA and the plain language of this term as it was understood in 1991 establish that it pertains exclusively to subscribers to landline telephones.

a.    *Basic rules of statutory interpretation establish that "residential" does not include "cellular".*

The plain language of the TCPA itself, read as a whole, forecloses the notion that the provision at issue applies to cellular telephones. Congress carefully distinguishes throughout the TCPA between residential and cellular telephones. Compare 47 U.S.C. § 227(b)(1)(A)(iii) (identifying prohibited calls to "any telephone number assigned to a . . . cellular telephone service . . . .") (emphasis added) with 47 U.S.C. § 227(b)(1)(B) (identifying prohibited calls to "any residential telephone line"); see also 47 U.S.C. § 227(b)(2)(B) (allowing the FCC to make certain regulations broadly exempting calls to residential lines); 47 U.S.C. § 227(b)(2)(C) (allowing the FCC to make regulations exempting certain calls to cell

phones where such calls are not charged to the called party); 47 U.S.C. § 227(c)(1) (permitting regulation relating to residential telephone subscribers' privacy rights).

This statutory distinction must be respected. Indeed, "[a] statute must, if possible, be construed in such a way that every word has effect." *United States v. Edington*, 992 F.3d 554, 556 (6th Cir. 2021). It is impossible to blur the cellular/residential line without a domino effect throughout the TCPA, depriving distinct statutory terms and provisions of their distinct meanings. *Compare* 47 U.S.C. § 227(b)(2)(B) and 47 C.F.R. § 64.1200(a)(3) (establishing exceptions for certain commercial calls made to residential lines), *with* 47 U.S.C. § 227(b)(2)(C) and 47 C.F.R. § 64.1200(a)(9) (establishing different exceptions for certain commercial calls to cellular lines). As the D.C. Circuit put it with respect to the TCPA, "[e]ven if one might hypothesize 'important reasons for treating residential and wireless telephone lines the same,' the TCPA itself presupposes the contrary— that calls to residential and wireless numbers warrant differential treatment." *ACA Int'l v. FCC*, 885 F.3d 687, 713 (D.C. Cir. 2018) (citation omitted).

In further support, the TCPA also uses the term "residential subscriber" in the definition of "established business relationship". *See* 47 U.S.C. § 227(a)(2). This definition, critically, only applies to the TCPA's facsimile provisions. *See id.* (citing 47 U.S.C. § 227(b)(1)(C)(i)). Fax machines, by definition, require a landline. *See* 47 U.S.C. § 227(a)(3) (applying to equipment using a "regular telephone line").

8

If Congress had intended 47 U.S.C. § 227(c) to encompass cellular telephones, it knew exactly how to do so—as it expressly included cellular telephones elsewhere in the statute. *See, e.g.*, *Lee v. Mortg. Ctr., LLC*, No. 14-CV-14147, 2015 WL 12681314, at *3 (E.D. Mich. May 22, 2015) (explaining "[t]he principle of 'expressio unius est exclusion alterius' . . . ."). As one Florida court put it:

> Considering Congress knew of cellular telephones—and in fact referenced cellular telephones as distinct from residential telephones throughout the TCPA—a proper interpretation of the statute would conclude that Congress intentionally omitted any reference to cellular telephones in section 227(c).

*Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*, 603 F. Supp. 3d 1334, 1340 (S.D. Fla. 2022). Courts have long recognized the clear statutory difference between residential and cellular lines. *See, e.g.*, *Barr v. Am. Ass'n of Pol. Consultants, Inc*, 591 U.S. 610, 638 (2020) (Breyer, J. concurring) ("The statute limits robocalls to residential landlines, hospitals, emergency numbers . . . . The only provision before us today, however, concerns robocalls to cell phones . . . .").[2]

The FCC has also long separately regulated residential and cellular telephone lines. *See, e.g.*, *In the Matter of Rules & Reguls. Implementing the Tel. Consumer*

---

[2]     The absence of any reference to cellular telephones in 47 U.S.C. § 227(c) does not give the FCC the ability to fill this gap; such a "theory has it backwards as a matter of basic separation of powers and administrative law." *Bais Yaakov of Spring Valley v. Fed. Commc'ns Comm'n*, 852 F.3d 1078, 1082 (D.C. Cir. 2017) ("The FCC may only take action that Congress has *authorized*.") (emphasis in original).

*Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1859 n.4 (2012) ("For ease of reference . . . and to avoid confusion as to which rules apply to calls directed to a cellular telephone number (wireless) or to a residential telephone line (wireline), we will refer to such calls as being placed to a 'wireless number' and to a 'residential line,' respectively"); *Matter of Cargo Airline Ass'n Petition for Expedited Declaratory Ruling Rules & Reguls. Implementing the Tel. Cons. Prot. Act of 1991*, 29 F.C.C. Rcd. 3432, 3439 (2014) ("We use 'residential' to mean 'residential wireline' consumers for purposes of this order, and to be consistent with the TCPA's terminology."); *CGB Seeks Comment on Petition for Expedited Declaratory Ruling & Exemption*, 29 F.C.C. Rcd. 15267 n.7 (2014) ("The Commission has implemented different rules for HIPAA exemptions for calls to residential numbers and wireless numbers").

The plain language of the TCPA forecloses the argument that "residential telephone subscriber" includes cellular telephones.

> **b.** ***A historical analysis likewise supports that "residential telephone subscriber" refers only to landlines.***

Critical here is looking to the application of the TCPA as it was written in 1991, uncolored by the evolution of technology since. A key historical analysis of "residential telephone subscriber" can be taken from the opinion of Judge Ikuta, the dissenting judge in the Ninth Circuit decision *Chennette v. Porch.com*, which case involved the Ninth Circuit's interpretation of the term "residential telephone

27270168 v4

subscriber". *See* 50 F.4th 1217, 1231 (9th Cir. 2022) (Ikuta, J. dissenting).[3]  While

*Chennette* predates *Loper Bright*, Judge Ikuta's analysis remains instructive:

> The statute does not define the key term "residential telephone subscribers." At the time Congress enacted the TCPA, the most applicable dictionary definition for "residence" was "[a] house where one's home is; a dwelling house." Residence, Black's Law Dictionary, Sixth Edition (1990).  The dictionary defines the word "residential" to mean "of, relating to, or connected with residence or residences." Residential, Webster's Third New International Dictionary (1981.  Thus, a "residential telephone" is by its terms a telephone connected with a residence.  A cell phone, which is mobile and not connected to a house, fixed abode, or dwelling, is not "residential" under the definitions provided by dictionaries current when the TCPA was enacted.

*Id* at 1233.  Judge Ikuta also turned to legislative history to note "[t]he common

understanding that the terms 'residential' and 'residential telephone' refer to a land

line in the home." *Id.* at 1233-34.[4]

---

[3]     *Chennette* bears noting.  <u>First</u>, while it is the only appellate case to evaluate the meaning of "residential telephone subscriber", the defendant had *conceded* that the term covered cellular telephones, and thus there was no adversarial evaluation of the issue.  *See Chennette*, 50 F.4th at 1223.  <u>Second</u>, *Chennette* predated *Loper Bright*, and thus the majority opinion is unpersuasive.

[4]     Judge Ikuta concluded that the 2003 Residential Subscriber Guidance should be viewed as enabling coverage of cell phones used "in the[] home[]" and "in the same manner" as a "residential wireline phone[]", and believed this interpretation should be given *Chevron* deference.  *Chennette*, 50 F.4th at 1238.  Even if this standard applied (and, following *Loper Bright* it should not), Plaintiff does not come close to meeting this standard.

11

This view is expected. *See, e.g.*, *Shelton v. Advance Funding, LLC*, 378 F. Supp 3d 356, 362 n.7 (E.D. Pa. May 8, 2019) ("[T]he plain language of 'residential telephone' describes a telephone used by individuals in the home, and not a cellular telephone, which can be used anywhere."). Similarly, when the FCC first evaluated implementing a national do-not-call registry, it did so under the subheading "Alternatives to Restrict Telephone Solicitation to ***Residences***". *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752, 8758 (1992) (emphasis added); *see also Tel. Consumer Prot. Act Tel. Solicitations, Autodialed & Artificial or Prerecorded Voice Message Tel. Calls, & the Use of Facsimile Machines*, 8 F.C.C. Rcd. 506, 508 (1993) (discussing when "residential customers" can file suit under 47 U.S.C. § 227(c)). Legislative history refers specifically to "residential telephone customers" and separately discusses cell phones. H.R. REP. 102-317, 6; S. REP. 102-178, 1 ("[T]he purposes of the bill are to protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home . . . .").

Critically, when the Residential Subscriber Guidance was adopted in 2003—12 years after the TCPA—not even the FCC claimed that the term "residential telephone subscriber" was *intended* in 1991 to cover cell phones. When it sought comment on this issue, the FCC asked only "should wireless telephone numbers or a subset thereof be considered 'residential telephone numbers' ***for the purposes of***

***the Commission's rules*** on telephone solicitations?" *In Re Rules & Reguls.
Implementing Tel. Consumer Prot. Act of 1991*, 17 F.C.C. Rcd. 17459, 17485 (2002)
(emphasis added).  And in its order, it relied not on dictionary definitions, but on
policy rationales 12 years after the fact.  *See In Re Rules & Reguls. Implementing
the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003).  The FCC
also appears to have been aware of the problems its unnatural interpretation could
cause elsewhere, limiting its interpretation to the TCPA.  *Id.* at 14039 n.139.

Plaintiff will no doubt point to the parade of horribles that he believes would
befall the public if the term "residential telephone subscriber" does not encompass
cell phones.  Plaintiff may note that cell phones have supplanted landlines for many.
But, modern phone usage cannot alter the TCPA's plain language.  The Supreme
Court encountered a similar issue under the TCPA in *Facebook v. Duguid*,
interpreting the statutory term "automatic telephone dialing system".  *See Facebook,
Inc. v. Duguid*, 592 U.S. 395, 399 (2021).  When faced with the argument that the
term should be interpreted so as to avoid rendering it "senescent", the Court held:

> Duguid's quarrel is with Congress, which did not define
> an autodialer as malleably as he would have liked.
> "Senescent" as a number generator (and perhaps the
> TCPA itself) may be, that is no justification for eschewing
> the best reading of § 227(a)(1)(A). This Court must
> interpret what Congress wrote . . . .

*Id.* at 409.  The Court specifically rejected the argument that the TCPA should be
"treated as an 'agile tool.'"  *Id.*

13

That the TCPA may consist of anachronistic provisions—indeed, it also covers fax transmissions—is not cause to alter the statute judicially.  As it was in *Duguid*, Plaintiff's quarrel is with Congress, which remains free to amend the TCPA.

**2.      This Court should follow those authorities interpreting the provision at hand as applying only to residential lines.**

The Sixth Circuit, analyzing the FCC's authority under 47 U.S.C. § 227(c)(1) to issue regulations explained:

> [T]he TCPA instructs the FCC to issue regulations "concerning the need to protect ***residential telephone subscribers'*** privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

*Charvat v. NMP, LLC*, 656 F.3d 440, 443 (6th Cir. 2011) (emphasis added); *Charvat v. GVN Michigan, Inc.*, 561 F.3d 623, 629 (6th Cir. 2009) (same).

Some courts within this Circuit, following this explanation, have restricted the claim at hand to *residential* lines and dismissed claims regarding calls to cellular lines.  By way of example, in *Cunningham v. Rapid Response Monitoring Services*, the United States District Court for the Middle District of Tennessee court evaluated a claim brought under 47 U.S.C. § 227(c)(5) for the alleged violation of 47 C.F.R. § 64.1200(d) regarding calls to a cellular telephone.  *See* 251 F. Supp. 3d 1187, 1210 (M.D. Tenn. 2017).  The court adopted the magistrate judge's recommendation of dismissal of the claim brought under § 227(c)(5) on the basis that the plaintiff alleged

that the calls were received on his cellular telephone. *See id.* at 1201.[5] Indeed, the magistrate specifically noted—following the Sixth Circuit's *Charvat v. NMP* case— "[t]he private right of action created by 47 U.S.C. § 227(c)(5) is accordingly limited to redress for violations of the regulations that concern residential telephone subscribers." *Id.* at 1210. The magistrate judge rejected the plaintiff's claim as he only alleged the receipt of calls on his cell phone. *Id.*

Another persuasive analysis of this issue can be found in *Turizo v. Subway Franchisee Advertising Fund Trust*. *See* 603 F. Supp. 3d at 1340-41. The court evaluated the statutory framework and plain language—detailed above—and determined that "[t]he TCPA clearly draws a distinction between cellular telephones and residential telephones." *Id.* at 1340. This distinction was so apparent, the court went on to state that "by presuming that any wireless number on the DNC Registry qualifies as 'residential,' the FCC expands section 227(c)(5)'s right of action to cellular telephone subscribers—without any congressional grant of authority to do so"—in other words, that the FCC's Residential Subscriber Guidance was *ultra vires*. *Id.* at 1341. Though the court inevitably determined it was bound, under the

---

[5] Albeit the court acknowledged, without deciding the issue, that some courts have included cell phones where there was factual support that the phone was used for residential purposes.

Hobbs Act, to accept the FCC's guidance, the Supreme Court removed this hurdle with *McLaughlin Chiropractic*.[6]

This Court should follow these decisions applying the plain language of the TCPA to determine that the provision at issue does not apply to cellular telephones.

## II.   PLAINTIFF'S AUTHORITY SHOULD BE DISREGARDED.

Plaintiff will no doubt point to cases siding with the FCC's interpretation that a cellular telephone can be a residential telephone.  OrthoTech recognizes that many courts have done so.  This Court should find these cases unpersuasive.

At the outset, the bulk of this authority is pre-*Loper Bright* (and all of it is pre-*McLaughlin Chiropractic*), and thus defers to or even finds controlling the FCC's 2003 Order.  *See, e.g.*,  *Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648, 655 (W.D. Tenn. 2020) (relying on FCC authority); *LaGuardia v. Designer Brands Inc.*, No. 20-cv-2311, 2021 WL 4125471, at *8 (S.D. Ohio Sept. 9, 2021), *on reconsid. in part*, 2022 WL 1121382 (S.D. Ohio Apr. 14, 2022) (same); *Izor v. Abacus Data Sys., Inc.*, No. 19-cv-01057, 2019 WL 3555110, at *2 (N.D. Cal. Aug. 5, 2019); *Smith v. Truman Rd. Dev., LLC*, No. 18-cv-00670, 2020 WL 2044730, at *10 (W.D. Mo. Apr. 28, 2020), *aff'd sub nom.* 29 F.4th 391 (8th Cir. 2022) (same); *Buxton v.*

---

[6]     Myriad others are in accord.  *See Cunningham v. Health Plan Intermediaries Holdings*, No. 18-00518, 2021 WL 1946645, at *4 (M.D. Tenn. May 14, 2021); *Gaker v. Q3M Ins. Sols.*, No. 22-00296, 2023 WL 2472649, at *3 (W.D.N.C. Feb. 8, 2023), *R&R*; *Callier v. GreenSky, Inc.*, No. 20-00304, 2021 WL 2688622, at *6 (W.D. Tex. May 10, 2021).

16

*Full Sail, LLC*, No. 6:24-CV-747-JSS-DCI, 2024 WL 5057222, at *3 (M.D. Fla. Dec. 10, 2024) (viewing FCC's interpretation as controlling under the Hobbs Act). Following *Loper Bright* and *McLaughlin Chiropractic*, this Court should not accept the FCC's 2003 Order as fact; "Courts must exercise their independent judgment . . . ." *Loper Bright*, 603 U.S. at 412.[7]  This pre-*Loper Bright* and pre-*McLaughlin Chiropractic* authority is thus unpersuasive and should not be considered.

Plaintiff may also point to post-*Loper Bright* decisions finding that the term "residential subscriber" can include cellular telephones.  *See, e.g.*, *Cacho v. McCarthy & Kelly LLP*, No. 23-CV-11157, 2024 WL 3293628, at *6 (S.D.N.Y. July 3, 2024); *Lirones v. Leaf Home Water Sols., LLC*, No. 5:23-CV-02087, 2024 WL 4198134, at *6 (N.D. Ohio Sept. 16, 2024); *Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-CV-01569, 2024 WL 184449, at *5 (M.D. Pa. Jan. 17, 2024).

This authority suffers from at least two critical problems.  First, these courts draw a false distinction between the term "residential telephone line" (found at 47 U.S.C. § 227(b)) and the term "residential telephone subscriber" found at 47 U.S.C.

---

[7]    Plaintiff may point out that the Court in *Loper Bright* allows lower courts to "seek aid from the interpretations of those responsible for implementing particular statutes." *Loper Bright*, 603 U.S. at 394.  The Court was quick to point out, however, that it was *contemporaneous* interpretations that remained consistent over time which were especially useful. *Id.*; *see also id.* at 386.  To be sure, the FCC's 2003 Order was issued more than a decade after the TCPA.  The undersigned is aware of no consistent, contemporaneous interpretation.  As detailed above, the FCC's view of "residential" appears to be inconsistent at best.

§ 227(c).  The argument goes that a "residential telephone subscriber" can logically be read more expansively than "residential telephone line" (a term accepted as describing a landline telephone) such that "the term 'residential subscriber' is indifferent to technology."  *Cacho*, 2024 WL 3293628, at \*7; *see also Lirones*, 2024 WL 4198134, at \*6; *Jackson*, 2024 WL 184449, at \*5.  This logic fails to hold water.

The TCPA uses "residential telephone line" and "residential telephone subscriber" not to denote a different reach, but because context requires it.  For example, 47 U.S.C. § 227(b) is structured to prohibit persons from using certain technologies to contact certain *lines* (including residential, cellular, hospitals, etc.).  On the other hand, 47 U.S.C. § 227(c) is structured to protect certain *subscribers* and permits creation of a national registry to allow certain *subscribers* to register.  It would make little sense to draft 47 U.S.C. § 227(c) to allow inanimate objects to sign up on a national registry.  A "residential telephone subscriber" is not intended to have a broader reach than a "residential telephone line", but just to substitute "subscriber" for "line" where the structure of the provision sensibly requires it.

The TCPA distinguishes throughout the statute (and, in turn, the FCC's regulations) between residential lines and cellular lines.  It makes little sense to have this carefully crafted dichotomy upended by the term "residential telephone subscriber", which courts like *Cacho*, *Lirones* and *Jackson* interpret to encompass all technologies used for residential purposes.  Courts like *Cacho*, *Lirones* and

18

*Jackson* do this with interpretive gymnastics.  It is axiomatic that "[a]djectives modify nouns—they pick out a subset of a category that possesses a certain quality." *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 19 (2018).  A *residential* telephone is a type of telephone.  A *subscriber* is the subscriber to a residential telephone.  These courts unmoor the words "residential telephone subscriber" to isolate "subscriber" as a subscriber to any phone used for residential (*i.e.*, non-business) purposes.  *See Cacho*, 2024 WL 3293628, at *8; *Lirones*, 2024 WL 4198134, at *6; *Jackson*, 2024 WL 184449, at *5-6.  This is not tenable.

Putting aside the grammatical difficulties, the attempt to distinguish the reach of "residential telephone line" from "residential telephone subscriber" runs into obvious statutory problems.  If the term "residential telephone line" in Subsection 227(b) undisputably means a landline, *see Cacho*, 739 F. Supp. 3d at 206, then these courts fail to grapple with Subsection 227(b)'s consent exception.  Consent would naturally come from a residential telephone *subscriber*.  *See* 47 U.S.C. § 227(b); S. REP. 102-178, 7 ("[T]elemarketers must obtain the express consent of any residential telephone subscriber before placing an automated telephone call to that subscriber . . .").  "Residential telephone subscriber" must then logically refer to a subscriber to a residential telephone line, and not some broad unmoored term to reflect any subscriber using a phone for residential purposes.

Second, courts like *Cacho* make improper policy judgments.  For example,

19

*Cacho* viewed the contrary construction as "absurd" because "an individual who eschews landline service and who uses a cellphone exclusively in his residence (perhaps because he is homebound) would be deprived of the TCPA's protection simply because his phone lacks a cord." *Cacho*, 2024 WL 3293628, at *7. The court thought that depriving cellular telephone users of the ability to register on the do-not-call registry "would have sweeping 'practical consequences.'" *Id.* at *6.

At the outset, the TCPA is a 30-plus-year-old statute. It is not absurd that cell phones would have been viewed differently at a time where few (if any) "eschewed" landlines in favor of cell phones—indeed, it would be entirely reasonable and expected. *See Loper Bright*, 603 U.S. at 400 (holding a statute's meaning "is fixed at the time of enactment."). Furthermore, the concern in *Cacho* that cell phone users would be deprived of the ability to register their numbers is wrong. *See Cacho*, 2024 WL 3293628, at *6. If the FCC wants to allow cell phone users to register on the do-not-call registry for purposes of administrative efficiency, it presumably may do so. The issue here is a limited one of statutory interpretation concerning who has a private right of action under 47 U.S.C. § 227(c) to enforce the do-not-call regulations. Cellular subscribers do not.

More substantively, and as noted above, the Supreme Court addressed and disregarded a nearly identical policy argument in *Facebook v. Duguid* that the TCPA should be viewed as an "agile tool" to address changing technologies, lest there be

a wave of unwanted calls.  *See* 592 U.S. at 409.  Whether or not it would be good policy to treat cellular telephones as residential telephones, such policy goals cannot be used to alter the TCPA's plain language.  *See Bais Yaakov*, 852 F.3d at 1083 ("[T]he fact that the agency believes its [rule] is good policy does not change the statute's text."); *Ins. Mktg. Coal. Ltd. v. Fed. Commc'ns Comm'n*, 127 F.4th 303, 316 (11th Cir. 2025) ("[A]textual good policy cannot overcome clear text."); *Turizo*, 603 F. Supp. 3d at 1341 ("[T]he FCC's assumptions as to congressional intent should not suffice to create an entirely new private right of action for cellular telephone subscribers.")

This Court should thus adhere to the plain text of the TCPA and the meaning of the term "residential telephone subscriber" as it was written in 1991, irrespective of how technological preferences have shifted over time.  This term simply does not encompass subscribers to cellular telephones; it is up to Congress to expand the TCPA.  It is not appropriate for the courts to re-write the clear language of the TCPA.

## CONCLUSION

For the foregoing reasons, OrthoTech, LLC respectfully requests the Court to (i) dismiss Plaintiff's Complaint with prejudice; and (ii) award all other relief it deems equitable and just.

27270168 v4

Dated:     July 22, 2025              Respectfully submitted,

*/s/ George B. Donnini*
David F. DuMouchel (P-25658)
George B. Donnini (P66793)
**BUTEL LONG, P.C.**
201 West Big Beaver, Suite1200
Troy, MI 48084
Telephone 248.258.1616
Email: dumouchd@butzel.com
donnini@butzel.com

/s/ *Mark S. Eisen*
Mark S. Eisen
**BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP**
71 South Wacker Drive
Suite 1600
Chicago, IL 60616
Telephone: 312.212.4949
Facsimile: 216.767.9192
Email: meisen@beneschlaw.com


*Counsel for OrthoTech, LLC*