## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

STEVE MANIACI, *on behalf of himself and others similarly situated*,

                       Plaintiffs,

v.

ORTHOTECH, LLC,

                       Defendant.

Case No. 2:25-cv-11138-RJW-APP

Hon. Robert J. White
Hon. Anthony P. Patti

**Oral Argument Requested**

## DEFENDANT ORTHOTECH, LLC'S
## MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

Defendant OrthoTech, LLC ("OrthoTech), by and through its attorneys respectfully moves this Court to dismiss Plaintiff Steve Maniaci's Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff asserts a single claim under the Telephone Consumer Protection Act ("TCPA), 47 U.S.C. § 227, *et seq.*—specifically, a claim pursuant to 47 U.S.C. § 227(c)(5) for the alleged receipt of text messages despite registering on the national do-not-call registry ("DNC"). This claim fails as a matter of law because it does not apply to text messages and does not apply to cellular telephones. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

Pursuant to Local Rule 7.1(a), the undersigned certifies that counsel for Defendant conferred with counsel for Plaintiff by telephone on August 1, 2025.

Counsel for Defendant explained the legal basis for the instant Motion, but did not obtain concurrence in the relief sought.  Plaintiff opposes the relief sought herein, necessitating the filing of this Motion.

WHEREFORE, for these reasons, and for the reasons set forth in the Brief in Support, which is incorporated herein by reference, and for such reasons as may be presented to the Court prior to its ruling hereon, OrthoTech respectfully requests that this Court grant this Motion in its entirety and dismiss the Complaint with prejudice.

Dated: August 5, 2025                    Respectfully submitted,

/s/ George B. Donnini
David F. DuMouchel (P-25658)
George B. Donnini (P66793)
**BUTZEL LONG, P.C.**
201 West Big Beaver, Suite1200
Troy, MI 48084
Telephone 248.258.1616
Email: dumouchd@butzel.com
        donnini@butzel.com

/s/ *Mark S. Eisen*____
Mark S. Eisen
meisen@beneschlaw.com
**BENESCH, FRIEDLANDER,**
**COPLAN & ARONOFF LLP**
71 S. Wacker Drive, Suite 1600
Chicago, Illinois 60606
Telephone: (312) 212-4949
Facsimile: (312) 767-9192

*Counsel for OrthoTech, LLC*

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 3

      I.     PLAINTIFF'S ALLEGATIONS. ......................................................... 3

      II.    REGULATORY BACKGROUND. ...................................................... 3

LEGAL STANDARD.......................................................................................... 5

ARGUMENT ...................................................................................................... 6

      I.     THE TCPA MUST BE INTERPRETED AS WRITTEN IN 1991, UNCONSTRAINED BY THE FCC'S ORDERS. ................................. 6

      II.    PLAINTIFF'S CLAIM SHOULD BE DISMISSED BECAUSE 47 U.S.C. § 227(C)(5) DOES NOT APPLY TO TEXT MESSAGES....................... 7

      III.   PLAINTIFF'S CLAIM SHOULD BE DISMISSED BECAUSE SECTION 227(C) DOES NOT APPLY TO CELL PHONES. ........................... 13

CONCLUSION.................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024)....................................................................................*passim*

*ACA Int'l v. FCC*,
885 F.3d 687 (D.C. Cir. 2018)................................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................5

*Bais Yaakov of Spring Valley v. FCC*,
852 F.3d 1078 (D.C. Cir. 2017)..............................................12, 15, 25

*Baisden v. Credit Adjustments, Inc.*,
813 F.3d 338 (6th Cir. 2016) ..................................................................6

*Barr v. Am. Ass'n of Pol. Consultants, Inc*,
591 U.S. 610 (2020) (Breyer, J. concurring) ......................................15

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 554 (2007)..................................................................................5

*Buxton v. Full Sail, LLC*,
No. 6:24-cv-747, 2024 WL 5057222 (M.D. Fla. Dec. 10, 2024).....................21

*Cacho v. McCarthy & Kelly LLP*,
No. 23-CV-11157, 2024 WL 3293628 (S.D.N.Y. July 3, 2024)............22, 23, 24

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016)...............................................................................11

*Matter of Cargo Airline Ass'n Petition for Expedited Declaratory
Ruling Rules & Reguls. Implementing the Tel. Cons. Prot. Act of
1991*, 29 F.C.C. Rcd. 3432 (2014)......................................................15

*Charvat v. GVN Michigan, Inc.*,
561 F.3d 623 (6th Cir. 2009) ................................................................19

i

*Charvat v. NMP, LLC*,
    656 F.3d 440 (6th Cir. 2011) ........................................................................19, 20

*Chennette v. Porch.com*,
    50 F.4th 1217 (9th Cir. 2022) (Ikuta, J. dissenting) ....................................16, 17

*In re Corrin*,
    849 F.3d 653 (6th Cir. 2017) ................................................................................8

*Cunningham v. Health Plan Intermediaries Holdings*,
    No. 18-00518, 2021 WL 1946645 (M.D. Tenn. May 14, 2021) .........................21

*Facebook, Inc. v. Duguid*,
    592 U.S. 395 (2021)....................................................................................*passim*

*Gaker v. Q3M Ins. Sols.*,
    No. 22-00296, 2023 WL 2472649 (W.D.N.C. Feb. 8, 2023).............................21

*Gary v. TrueBlue, Inc.*,
    No. 17-CV-10544, 2018 WL 3647046 (E.D. Mich. Aug. 1, 2018) .....................6

*Herrick v. QLess, Inc.*,
    216 F. Supp. 3d 816 (E.D. Mich. 2016) .............................................................11

*Hughes Aircraft Co. v. Jacobson*,
    525 U.S. 432 (1999)...............................................................................................7

*Ins. Mktg. Coal. Ltd. v. FCC*,
    127 F.4th 303 (11th Cir. 2025) ...........................................................................25

*Izor v. Abacus Data Sys., Inc.*,
    No. 19-cv-01057, 2019 WL 3555110 (N.D. Cal. Aug. 5, 2019)........................21

*Jackson v. Direct Bldg. Supplies LLC*,
    No. 4:23-CV-01569, 2024 WL 184449 (M.D. Pa. Jan. 17, 2024) ...............22, 23

*Keating v. Peterson's Nelnet, LLC*,
    615 F. App'x 365 (6th Cir. 2015).............................................................8, 11, 12

*LaGuardia v. Designer Brands Inc.*,
    No. 20-cv-2311, 2021 WL 4125471 (S.D. Ohio Sept. 9, 2021)........................21

*Lamie v. U.S. Tr.*,
    540 U.S. 526 (2004)..................................................................................7

*Lee v. Mortg. Ctr., LLC*,
    No. 14-CV-14147, 2015 WL 12681314 (E.D. Mich. May 22,
    2015) .....................................................................................................14

*Lirones v. Leaf Home Water Sols., LLC*,
    No. 5:23-CV-02087, 2024 WL 4198134 (N.D. Ohio Sept. 16,
    2024) ................................................................................................22, 23

*Murphy v. DCI Biologicals Orlando, LLC*,
    797 F.3d 1302 (11th Cir. 2015) ............................................................11

*Norris v. Stanley*,
    73 F.4th 431 (6th Cir. 2023) ...................................................................5

*Perrin v. United States*,
    444 U.S. 37 (1979)...................................................................................7

*Pulsifer v. United States*,
    601 U.S. 124 (2024)..................................................................................9

*R&R*; *Callier v. GreenSky, Inc.*,
    No. 20-00304, 2021 WL 2688622 (W.D. Tex. May 10, 2021).........................21

*In Re Rules & Reguls. Implementing Tel. Consumer Prot. Act of 1991*,
    17 F.C.C. Rcd. 17459 (2002)..................................................................18

*In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of
    1991*, 18 F.C.C. Rcd. 14014 (2003)........................................................18

*In the Matter of Rules & Reguls. Implementing the Tel. Consumer
    Prot. Act of 1991*,
    27 F.C.C. Rcd. 1830 (2012)...................................................................15

*In the Matter of Rules & Reguls. Implementing the Tel. Consumer
    Prot. Act of 1991*,
    7 F.C.C. Rcd. 8752 (1992).....................................................................17

*In Re Rules and Regulations Implementing the TCPA of 1991*,
    18 FCC Rcd. 14014 ............................................................................4, 5

*Salcedo v. Hanna*,
   936 F.3d 1162 (11th Cir. 2019) ........................................................................8

*Satterfield v. Simon & Schuster, Inc.*,
   569 F.3d 946 (9th Cir. 2009) ........................................................................11

*Shelton v. Advance Funding, LLC*,
   378 F. Supp 3d 356 (E.D. Pa. May 8, 2019) ..................................................17

*Stevens-Bratton v. TruGreen, Inc.*,
   437 F. Supp. 3d 648 (W.D. Tenn. 2020) .....................................................5, 21

*Tel. Consumer Prot. Act Tel. Solicitations, Autodialed & Artificial or
   Prerecorded Voice Message Tel. Calls, & the Use of Facsimile
   Machines*, 8 F.C.C. Rcd. 506 (1993) ............................................................17

*Trim v. Reward Zone USA LLC*,
   76 F.4th 1157 (9th Cir. 2023) .........................................................................9

*Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*,
   603 F. Supp. 3d 1334 (S.D. Fla. 2022)................................................15, 20, 25

*United States v. Edington*,
   992 F.3d 554 (6th Cir. 2021) .........................................................................13

**Statutes**

47 U.S.C. § 227(a)(2)......................................................................................14

47 U.S.C. § 227(a)(3)......................................................................................14

47 U.S.C. § 227(b) ........................................................................4, 10, 22, 23

47 U.S.C. § 227(b)(1)(A)(iii) ..........................................................................13

47 U.S.C. § 227(b)(1)(B) ................................................................................13

47 U.S.C. § 227(b)(2)(B) .............................................................................13, 14

47 U.S.C. § 227(b)(2)(C) .............................................................................13, 14

47 U.S.C. § 227(c) ...................................................................................*passim*

47 U.S.C. § 227(c)(1)...........................................................................2, 3, 13, 19

47 U.S.C. § 227(c)(3)....................................................................................4

47 U.S.C. § 227(c)(5) and ...........................................................................1

47 U.S.C. § 227(e) ..............................................................................4, 8, 9

47 U.S.C. § 227(e)(8)(A), (B)......................................................................8

**Other Authorities**

47 C.F.R. § 64.1200(a)(3) ..........................................................................14

47 C.F.R. § 64.1200(a)(9) ..........................................................................14

47 C.F.R. §§ 64.1200(c)(2) .......................................................................1, 3

47 C.F.R. § 64.1200(d) ..............................................................................20

*CGB Seeks Comment on Petition for Expedited Declaratory Ruling &*
   *Exemption*, 29 F.C.C. Rcd. 15267 n.7 (2014) ...................................15

*Notice of Proposed Rulemaking*, 17 FCC Rcd 17459, ¶ 1 (2002)........................4, 9

Order, 18 F.C.C. Rcd. at 14039 ...................................................................5

S. REP. 102-178, 7...................................................................................23

*Tel. Consumer Prot. Act Tel. Solicitations, Autodialed & Artificial or*
   *Prerecorded Voice Message Tel. Calls, & the Use of Facsimile*
   *Machines,*
   8 F.C.C. Rcd. 506 (1993)...................................................................11

## ISSUES PRESENTED

1.      Whether 47 U.S.C. § 227(c)(5) applies to text messages. OrthoTech answers: "No".

2.      Whether Plaintiff has adequately alleged that the telephonic outreach at issue was received by a "residential telephone subscriber" such that he can plausibly allege a claim under 47 U.S.C. § 227(c)(5) via 47 C.F.R. § 64.1200(c)(2).  OrthoTech answers: "No".

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

47 U.S.C. § 227(c)(1).

47 C.F.R. § 64.1200(c).

*ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018).

*Charvat v. GVN Michigan, Inc.*, 561 F.3d 623 (6th Cir. 2009).

*Charvat v. NMP, LLC*, 656 F.3d 440 (6th Cir. 2011).

*Chennette v. Porch.com*, 50 F.4th 1217 (9th Cir. 2022).

*Cunningham v. Rapid Response Monitoring Services,* 251 F. Supp. 3d 1187 (M.D. Tenn. 2017).

*Jones v. Blackstone Medical Services*, No. 24-cv-01074, 2025 WL 2042764, at *1 (C.D. Ill. July 21, 2025)

*Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365 (6th Cir. 2015)

*Lee v. Mortg. Ctr., LLC*, No. 14-CV-14147, 2015 WL 12681314 (E.D. Mich. May 22, 2015)

*Loper Bright Enterp. v. Raimondo,* 603 U.S. 369 (2024).

*McLaughlin Chiropractic Associates, Inc. v. McKesson Corporation*, 145 S. Ct. 2006 (2025).

*Shelton v. Advance Funding, LLC*, 378 F. Supp 3d 356 (E.D. Pa. May 8, 2019).

*Trim v. Reward Zone USA LLC*, 76 F.4th 1157 (9th Cir. 2023)

*Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.,* 603 F. Supp. 3d 1334 (S.D. Fla. 2022).

*United States v. Edington*, 992 F.3d 554 (6th Cir. 2021).

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

STEVE MANIACI, *on behalf of himself and others similarly situated*,

Plaintiffs,

v.

ORTHOTECH, LLC,

Defendant.

Case No. 2:25-cv-11138-RJW-APP

Hon. Robert J. White
Hon. Anthony P. Patti

**Oral Argument Requested**

## DEFENDANT ORTHOTECH, LLC'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

Defendant OrthoTech, LLC ("OrthoTech"), by and through its attorneys, respectfully submits this Brief in Support of its Motion to Dismiss Plaintiff's First Amended Class Action Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6).  In support thereof, OrthoTech states as follows:

## INTRODUCTION

Plaintiff brings a putative class action against OrthoTech under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5), contending he received text messages on his cellular telephone from OrthoTech despite that he is on the national do not call list.  Plaintiff thus asserts one claim under 47 U.S.C. § 227(c)(5) and through the TCPA's corresponding regulation 47 C.F.R. §§ 64.1200(c)(2) (the do-not-call or "DNC" registry regulations).

1

The problem with Plaintiff's claim is twofold: (i) the provision at issue does not apply to text messages and (ii) the provision at issue does not apply to cellular telephones.  *See* 47 U.S.C. §§ 227(c)(1) & (3) (allowing FCC to issue do-not-call regulations as it relates to residential telephone numbers); 47 U.S.C. § 227(c)(5) (applying the private right of action only to "telephone calls"). Plaintiff's only route to a claim is that the Federal Communications Commission ("FCC") has previously issued orders expanding the scope of the DNC provision to both text messages and cell phones. However, on June 20, 2025, the Supreme Court issued its decision in *McLaughlin Chiropractic Associates, Inc. v. McKesson Corporation*, holding trial courts are "not bound by the FCC's interpretation of the TCPA." *See* 145 S. Ct. 2006, 2022 (2025). This Court must now utilize "the reading the court would have reached if no agency were involved," as the TCPA was written in 1991. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 400 (2024) ("[E]very statute's meaning is fixed at the time of enactment.") (internal quotation and citation omitted).

Turning to the TCPA at the time it was enacted, Plaintiff's claim must be dismissed. Plaintiff alleges he received *text messages* on his *cell* phone in violation of the TCPA.  But, the plain language of the TCPA and its history indicate the term "telephone call" could not have been intended to cover text messages (which did not exist at the time the TCPA was enacted) and the term "residential telephone subscriber" does not apply to cellular telephones (which are separately discussed in

2

the TCPA). While technology usage has shifted since 1991, it is for Congress to expand or alter the TCPA. Modern day policy rationales, whether stated by the FCC or courts prior to *Loper Bright*, cannot supplant the TCPA's plain language.

This case should be dismissed with prejudice.  Plaintiff simply cannot avail himself of the claim at issue, which is evident from the face of Plaintiff's Complaint.

## BACKGROUND

### I.    PLAINTIFF'S ALLEGATIONS.

Plaintiff initiated this putative class action on April 21, 2025, and amended his pleading July 23, 2025. (Dkt. 1, 14.)  Plaintiff contends he received text messages from OrthoTech without his consent despite that he registered on the national do not call registry.  (*Id.* ¶¶ 14-19.)   Plaintiff alleges that the phone number at issue, beginning with (512)-925-XXXX is his *cellular* telephone number.  (*Id.* ¶ 8.)

Plaintiff asserts one claim under 47 U.S.C. § 227(c)(5), through 47 C.F.R. § 64.1200(c)(2). Plaintiff seeks to represent a putative nationwide class, remarkably reaching back to 2021 (three years prior to OrthoTech's formation). (*Id.* ¶ 22.)

### II.   REGULATORY BACKGROUND.

The TCPA was enacted in 1991 and, in relevant part, allows the FCC to issue regulations "to protect ***residential telephone subscribers'*** privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1) (emphasis added). The TCPA also authorizes the FCC to "require the establishment and operation of a single national database to compile a list of telephone numbers of

residential subscribers who object to receiving telephone solicitations." 47 U.S.C. § 227(c)(3). Section 227(c)(5), in turn, affords a private right of action to persons receiving "more than one *telephone call* within any 12-month period" in violation of the prescribed regulations. 47 U.S.C. § 227(c)(5) (emphasis added).

Two facts are apparent from this language. <u>First</u>, Section 227(c) does not mention text messages, even though the TCPA distinguishes between telephone calls and text messages in other sections. *See* 47 U.S.C. § 227(e). <u>Second</u>, Section 227(c) does not mention cellular telephones, even though the TCPA distinguishes between residential and cellular telephones in other sections. *See* 47 U.S.C. § 227(b).

However, in 2002, the FCC issued a notice regarding its desire to update the TCPA to account for "[n]ew technologies" that emerged since 1991. *See Notice of Proposed Rulemaking*, 17 FCC Rcd 17459, ¶ 1 (2002) ("2002 NPRM"). Then, in 2003, the FCC proclaimed "call" under the TCPA—notably, analyzing *only* the term "call" under Section 227(b) rather than "telephone call" under Section 227(c)— "encompasses both voice calls and text calls." *In Re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014 ¶ 165 (2003) ("2003 Order"). The FCC identified no statutory basis for concluding a text message was a "call." Rather, the FCC merely believed it consistent with the goals of the statute. *See id*.

Also in this 2003 Order, the FCC indicated that the DNC registry regulations could apply to cell phones. Specifically, the FCC stated:

> Therefore, we conclude that wireless subscribers may participate in the national do-not-call list. . . . [W]e will presume wireless subscribers who ask to be put on the national do-not-call list to be "residential subscribers." Such a presumption, however, may require a complaining wireless subscriber to provide further proof of the validity of that presumption should we need to take enforcement action.

2003 Order, 18 F.C.C. Rcd. at 14039.[1] Again, the FCC provided no statutory basis for this conclusion, which instead turned to policy rationales exclusively. *Id.* at 14038-39. It is clear in both instances that the FCC improperly and without authorization expanded and altered the plain language of the TCPA.

## LEGAL STANDARD

A complaint fails under Rule 12(b)(6) if it does not provide enough factual information to "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555, 570 (2007). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a court accepts well-pleaded facts as true, it "need not accept as true legal conclusions or unwarranted factual inferences." *Norris v. Stanley*, 73 F.4th 431, 435 (6th Cir. 2023) (internal quotations and citation omitted).

---

[1] Even if this Court finds for Plaintiff despite *Loper Bright* and *McLaughlin Chiropractic*, Plaintiff still bears the burden of proving he in fact uses his cellular telephone for residential purposes. *See, e.g.*, *Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648, 656 (W.D. Tenn. 2020) ("A plaintiff, however, must put forth evidence establishing that her cellular telephone is used for residential purposes.").

5

## **ARGUMENT**

**I.   THE TCPA MUST BE INTERPRETED AS WRITTEN IN 1991, UNCONSTRAINED BY THE FCC'S ORDERS.**

Last term, the Supreme Court eliminated *Chevron* deference, returning courts to their traditional function "to decide whether the law means what the agency says." *Loper Bright*, 603 U.S. at 392. Courts must utilize "the reading the court would have reached if no agency were involved." *Id.* at 400 (internal quotations and citation omitted). Critically, "every statute's meaning is fixed at the time of enactment." *Id.* (internal quotations and citation omitted).

This term, the Supreme Court issued its decision in *McLaughlin Chiropractic*. *See* 145 S. Ct. at 2011. This decision is critical because the Sixth Circuit previously viewed FCC Orders as dispositive at the district court level under the Hobbs Act. *See Baisden v. Credit Adjustments, Inc.*, 813 F.3d 338, 342 (6th Cir. 2016); *Gary v. TrueBlue, Inc.*, No. 17-CV-10544, 2018 WL 3647046, at *4 (E.D. Mich. Aug. 1, 2018). In *McLaughlin Chiropractic*, the Supreme Court eliminated this line of authority, holding that district courts are not "bound by the FCC's interpretation of the TCPA." *See* 145 S. Ct. at 2022.

The confluence of *Loper Bright* and *McLaughlin Chiropractic* results in the following: the provision of the TCPA at hand must be interpreted to reach the "best" interpretation, as it was written in 1991, without influence by the modern transition from landlines to cell phones and unconstrained by the interpretations of the FCC.

6

## II.   PLAINTIFF'S CLAIM SHOULD BE DISMISSED BECAUSE 47 U.S.C. § 227(C)(5) DOES NOT APPLY TO TEXT MESSAGES.

### A.   The Plain Language of Section 227(c)(5) Requires Dismissal.

With the elimination of *Chevron* deference and Hobbs Act abdication, the issue for the Court now is a straightforward matter of statutory interpretation: whether a text message is a "telephone call" under Section 227(c)(5). The answer is an equally straightforward "no"—such technology did not even exist in 1991.

It is axiomatic that "[w]e should prefer the plain meaning since that approach respects the words of Congress." *Lamie v. U.S. Tr.*, 540 U.S. 526, 536 (2004). A text message is not a "telephone call." No normal person refers to a text message, or thinks of a text message, as a "call". No ordinary user of the English language would write the sentence "John called Sue" intending to mean "John sent a text message to Sue," nor would any ordinary reader interpret the sentence in that manner. *Perrin v. United States*, 444 U.S. 37, 42 (1979) ("[U]nless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.").

Plain language is dispositive, ending this Court's inquiry. *See Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 438 (1999) ("As in any case of statutory construction, our analysis begins with the language of the statute. . . . And where the statutory language provides a clear answer, it ends there as well.") (internal quotations and citation omitted). But even if the Court were to find an ambiguity, the remaining principles of statutory construction support the same conclusion. Specifically, if a

term of a statute is ambiguous, courts can look to legislative history. *In re Corrin*, 849 F.3d 653, 657 (6th Cir. 2017).

To this end, no one can suggest Congress meant for "telephone call" to include "text message," which "did not exist in 1991 when the TCPA was enacted." *Salcedo v. Hanna*, 936 F.3d 1162, 1169 (11th Cir. 2019), *abrogated on other grounds by Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023); *see also Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015) ("It is clear that Congress did not address, or even intend to address, the treatment of text messages when considering and passing the TCPA. In fact, the first text message was not sent until December 3, 1992, almost a full year after the December 20, 1991, enactment of the TCPA."). It is inconceivable that Congress intended "call" to encompass a non-voice technology that was yet to be used. As the Supreme Court emphasized in *Loper*: "That is the whole point of having written statutes; every statute's meaning is fixed at the time of enactment." 603 U.S. at 400 (internal quotation marks omitted).

Critically, Congress later amended the TCPA to bring text messages within its scope under a *different provision* regarding Caller ID requirements. Consolidated Appropriations Act, 2018, H.R. 1625, 115th Cong., Pub. L. No. 115-141, div. P, § 503(a) (2018) (codified at 47 U.S.C. § 227(e)). Congress distinguished between "a call made using a voice service" from a "text message sent using a text message service." 47 U.S.C. § 227(e)(8)(A), (B). This amendment *was not* expanded to cover

the provision at issue here. This is critical because "[i]n a given statute, . . . different terms usually have different meanings." *Pulsifer v. United States*, 601 U.S. 124, 149 (2024). Congress did not amend Section 227(c) to include text messages, even though it clearly understood the difference between a phone call and a text message.

If Congress intended for the term "telephone call" to include text messages in Section 227(c), the delineation between calls and text messages in Section 227(e) would be meaningless; Congress would have just prohibited "calls" using false Caller ID information. *See Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1162 (9th Cir. 2023) ("If voice calls encompassed text messages, the inclusion of the term text message would be surplusage, and Congress would have written the statute in a manner contrary to a basic canon of statutory construction, that a statute should be interpreted 'so as not to render one part inoperative.'").

The FCC's expansion of the term "call" to include text messages was not rooted in the text of the TCPA, but rather the FCC believed it was justified as a policy matter to expand the TCPA to account for "[n]ew technologies" that the statute did not address. See 2002 NPRM at ¶ 1; *see also* 2003 Order at Appendix B ¶ 2. But the Supreme Court's directive—and specifically in the context of the TCPA—is clear: even where the TCPA may be outdated, courts cannot rewrite the TCPA to update it for modern technology. *Facebook, Inc. v. Duguid*, 592 U.S. 395, 409 (2021). *Loper* and *McLaughlin Chiropractic* reaffirm this directive. *See Loper*,

603 U.S. at 403 ("Courts interpret statutes, no matter the context, based on the traditional tools of statutory construction, not individual policy preferences.").

A text message is not a "telephone call" and is not actionable under Section 227(c)(5), unless and until Congress amends the statute.

### B.   *Loper* and *McLaughlin Chiropractic* Changed the Landscape.

Plaintiff may turn to pre-*Loper Bright* and *McLaughlin Chiropractic* cases finding text messages covered by the TCPA. This case law should be disregarded.

At the outset, and indicative of the sea change brought about by the Supreme Court, a Central District of Illinois court recently issued an instructive ruling on this issue. In *Jones v. Blackstone Med. Services, LLC* the court evaluated whether Section 227(c)(5) applied to text messages. *See* No. 24-cv-01074, 2025 WL 2042764, at *1 (C.D. Ill. July 21, 2025). Following *Loper Bright* and *McLaughlin Chiropractic*, the court engaged in its own statutory analysis. *Id.* at *3-4. The court analyzed and held:

> Text messaging was not an available technology in 1991, and thus "telephone call" would not have included text messages or SMS messages. . . . Moreover, in today's American parlance, "telephone call" means something entirely different from "text message". Thus, under a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages.

*Id.* at *4 (internal quotations and citations omitted). The court likewise engaged in an analysis of the FCC's orders, noting the FCC's orders regarding text messaging in fact only discussed Section 227(b), and not Section 227(c). *See id.* at *4-5. While

the court afforded respect to the FCC's view, it found the plain language controlled, holding "[i]t is not for a court to legislate by reading into the TCPA something that is not there." *Id.* at *5. Rather it is for Congress to update the TCPA. *Id.*

The pre-*Loper Bright* and *McLaughlin Chiropractic* case law on this issue did not engage in an independent statutory analysis, but relied exclusively on the FCC's pronouncements. *See, e.g.*, *Keating*, 615 F. App'x 365, 371 (6th Cir. 2015) ("We thus unhesitatingly afford deference to the [FCC's] holding that a text message should be treated as a 'call' for purposes of the TCPA," relying on *Chevron*). Trial courts in the Sixth Circuit, in turn, relied on *Keating*. *See, e.g.*, *Herrick v. QLess, Inc.*, 216 F. Supp. 3d 816, 818 (E.D. Mich. 2016).

Courts in other circuits similarly, reflexively, deferred to (or determined they were bound by) FCC orders. *See, e.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (holding that courts "must defer" to the FCC's determination that a text message was a "call"); *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1305 (11th Cir. 2015) (deferring wholesale to the FCC's 2003 Order). As a result, this issue went unchallenged even before the Supreme Court. *See Duguid*, 592 U.S. at 400 n.2 ("Neither party disputes that the TCPA's prohibition also extends to sending unsolicited text messages. We therefore assume that it does without considering or resolving that issue."); *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) (noting whether a text message was a call was undisputed).

*Loper Bright* and *McLaughlin Chiropractic* have thus opened the door for courts to reach their own independent reading, as "if no agency were involved." *Loper Bright*, 603 U.S. at 400. The *Keating* analysis—deferring wholesale to the FCC—is no longer controlling.[2] The *James* analysis above is precisely the type of analysis this Court can, and should, undertake. *See Jones*, 2025 WL 2042764, at *4.

As a final matter, it also bears noting *Keating* improperly looked to policy rationales. *Keating*, 615 F. App'x at 370-71. Policy rationales and modern-day technology preferences cannot supplant or alter the TCPA's plain text. *See Loper Bright*, 603 U.S. at 403 ("Courts interpret statutes, no matter the context, based on the traditional tools of statutory construction, not individual policy preferences."); *id.* at 400 ("[E]very statute's meaning is fixed at the time of enactment.") (internal quotations and citation omitted); *Bais Yaakov of Spring Valley v. FCC*, 852 F.3d 1078, 1083 (D.C. Cir. 2017) ("[T]he fact that the agency believes its [rule] is good policy does not change the statute's text."). It remains for *Congress* to amend the TCPA. *See, e.g.*, *Jones*, 2025 WL 2042764, at *5 ("It is for Congress to respond to the issues presented in this case and to address the realities of today's technology.").

---

[2]     Plaintiff may argue that courts can "seek aid from the interpretations of those responsible for implementing particular statutes." *Loper Bright*, 603 U.S. at 394. The Supreme Court was quick to point out, however that it was *contemporaneous*, consistent interpretations that were especially useful. *Id.*; *see also id.* at 386. To be sure, the FCC's 2003 Order was issued more than a decade after the TCPA. The undersigned is aware of no consistent, contemporaneous interpretation. As detailed above, the FCC's view of "residential" appears to be inconsistent at best.

12

## III. PLAINTIFF'S CLAIM SHOULD BE DISMISSED BECAUSE SECTION 227(C) DOES NOT APPLY TO CELL PHONES.

### A. The Term "Residential Telephone Subscriber", as Written in 1991, Plainly Refers to a Subscriber to a Landline Telephone.

As detailed above, 47 U.S.C. § 227(c) only permits the FCC to issue regulations concerning "residential telephone subscribers". 47 U.S.C. § 227(c)(1). This term pertains exclusively to subscribers to landline telephones.

#### 1. Basic rules of statutory interpretation establish that "residential" does not include "cellular".

The plain language of the TCPA forecloses the notion that Section 227(c) applies to cell phones. Congress carefully distinguished residential from cellular phones throughout the TCPA. *Compare* 47 U.S.C. § 227(b)(1)(A)(iii) (identifying prohibited calls to "any telephone number assigned to a . . . cellular telephone service . . . .") (emphasis added) *with* 47 U.S.C. § 227(b)(1)(B) (identifying prohibited calls to "any residential telephone line"); *see also* 47 U.S.C. § 227(b)(2)(B) (allowing the FCC to make certain regulations broadly exempting calls to residential lines); 47 U.S.C. § 227(b)(2)(C) (allowing the FCC to make regulations exempting certain calls to cell phones where such calls are not charged); 47 U.S.C. § 227(c)(1) (permitting regulation relating to residential telephone subscribers' privacy rights).

This distinction must be respected. Indeed, "[a] statute must, if possible, be construed in such a way that every word has effect." *United States v. Edington*, 992 F.3d 554, 556 (6th Cir. 2021). It is impossible to blur the cellular/residential line

without a domino effect throughout the TCPA, depriving distinct terms of their distinct meanings. *Compare* 47 U.S.C. § 227(b)(2)(B) and 47 C.F.R. § 64.1200(a)(3) (establishing exceptions for certain commercial calls made to residential lines), *with* 47 U.S.C. § 227(b)(2)(C) and 47 C.F.R. § 64.1200(a)(9) (establishing different exceptions for certain commercial calls to cellular lines). As the D.C. Circuit put it, "[e]ven if one might hypothesize 'important reasons for treating residential and wireless telephone lines the same,' the TCPA itself presupposes the contrary—that calls to residential and wireless numbers warrant differential treatment." *ACA Int'l v. FCC*, 885 F.3d 687, 713 (D.C. Cir. 2018) (citation omitted).[3]

If Congress had intended 47 U.S.C. § 227(c) to encompass cellular telephones, it knew exactly how to do so—as it expressly included cellular telephones elsewhere in the statute. *See, e.g.*, *Lee v. Mortg. Ctr., LLC*, No. 14-CV-14147, 2015 WL 12681314, at *3 (E.D. Mich. May 22, 2015) (explaining "[t]he principle of 'expressio unius est exclusion alterius' . . . ."). As one Florida court put it:

> Considering Congress knew of cellular telephones—and in fact referenced cellular telephones as distinct from residential telephones throughout the TCPA—a proper interpretation of the statute would conclude that Congress intentionally omitted any reference to cellular telephones in section 227(c).

---

[3] In further support, the TCPA also uses the term "residential subscriber" in the definition of "established business relationship." *See* 47 U.S.C. § 227(a)(2). This definition, critically, only applies to the TCPA's facsimile provisions. *Id*. (citing 47 U.S.C. § 227(b)(1)(C)(i)). Fax machines *require* a landline. 47 U.S.C. § 227(a)(3).

*Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*, 603 F. Supp. 3d 1334, 1340 (S.D. Fla. 2022). Courts have long recognized the clear statutory difference between residential and cellular lines. *See, e.g.*, *Barr v. Am. Ass'n of Pol. Consultants, Inc*, 591 U.S. 610, 638 (2020) (Breyer, J. concurring) ("The statute limits robocalls to residential landlines, hospitals, emergency numbers . . . . The only provision before us today, however, concerns robocalls to cell phones . . . .").[4]

The FCC has also long separately regulated residential and cellular telephone lines. *See, e.g.*, *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1859 n.4 (2012) ("For ease of reference . . . and to avoid confusion as to which rules apply to calls directed to a cellular telephone number (wireless) or to a residential telephone line (wireline), we will refer to such calls as being placed to a 'wireless number' and to a 'residential line,' respectively"); *Matter of Cargo Airline Ass'n Petition for Expedited Declaratory Ruling Rules & Reguls. Implementing the Tel. Cons. Prot. Act of 1991*, 29 F.C.C. Rcd. 3432, 3439 (2014) ("We use 'residential' to mean 'residential wireline' consumers for purposes of this order, and to be consistent with the TCPA's terminology."); *CGB Seeks Comment on Petition for Expedited Declaratory Ruling & Exemption*, 29 F.C.C.

---

[4]    The absence of any reference to cellular telephones in 47 U.S.C. § 227(c) does not give the FCC the ability to fill this gap; such a "theory has it backwards as a matter of basic separation of powers and administrative law." *Bais Yaakov*, 852 F.3d at 1082 ("The FCC may only take action that Congress has *authorized*.").

Rcd. 15267 n.7 (2014) ("The Commission has implemented different rules for HIPAA exemptions for calls to residential numbers and wireless numbers").

The plain language of the TCPA forecloses the argument that "residential telephone subscriber" includes cellular telephones.

### 2. A historical analysis likewise supports that "residential telephone subscriber" refers only to landlines.

Critical here is looking to the application of the TCPA as it was written in 1991, uncolored by the evolution of technology since. A key historical analysis of "residential telephone subscriber" can be taken from the opinion of Judge Ikuta, the dissenting judge in *Chennette v. Porch.com*, which case involved the Ninth Circuit's interpretation of the term "residential telephone subscriber." *See Chennette v. Porch.com*, 50 F.4th 1217, 1231 (9th Cir. 2022) (Ikuta, J. dissenting).[5] While *Chennette* predates *Loper Bright*, Judge Ikuta's analysis remains instructive:

> The statute does not define the key term "residential telephone subscribers." At the time Congress enacted the TCPA, the most applicable dictionary definition for "residence" was "[a] house where one's home is; a dwelling house." Residence, Black's Law Dictionary, Sixth Edition (1990). The dictionary defines the word "residential" to mean "of, relating to, or connected with residence or residences." Residential, Webster's Third New International Dictionary (1981. Thus, a "residential telephone" is by its terms a

---

[5]    *Chennette* bears noting.  First, while it is the only appellate case to evaluate the meaning of "residential telephone subscriber", the defendant had *conceded* that the term covered cellular telephones, and thus there was no adversarial evaluation of the issue. *See Chennette*, 50 F.4th at 1223. Second, *Chennette* predated *Loper Bright*, and thus the majority opinion is unpersuasive.

> telephone connected with a residence.  A cell phone, which is
> mobile and not connected to a house, fixed abode, or
> dwelling, is not "residential" under the definitions provided
> by dictionaries current when the TCPA was enacted.

*Id* at 1233. Judge Ikuta also turned to legislative history to note "[t]he common
understanding that the terms 'residential' and 'residential telephone' refer to a land
line in the home." *Id.* at 1233-34.[6]

This view is expected. *See, e.g.*, *Shelton v. Advance Funding, LLC*, 378 F.
Supp 3d 356, 362 n.7 (E.D. Pa. May 8, 2019) ("[T]he plain language of 'residential
telephone' describes a telephone used by individuals in the home, and not a cellular
telephone, which can be used anywhere."). Similarly, when the FCC first evaluated
implementing a national do-not-call registry, it did so under the subheading
"Alternatives to Restrict Telephone Solicitation to **Residences**".  *In the Matter of
Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd.
8752, 8758 (1992) (emphasis added); *see also Tel. Consumer Prot. Act Tel.
Solicitations, Autodialed & Artificial or Prerecorded Voice Message Tel. Calls, &
the Use of Facsimile Machines*, 8 F.C.C. Rcd. 506, 508 (1993) (discussing when
"residential customers" can file suit under 47 U.S.C. § 227(c)).  Legislative history

---

[6]    Judge Ikuta concluded that the 2003 Order should be viewed as enabling
coverage of cell phones used "in the[] home[]" and "in the same manner" as a
"residential wireline phone[]," and believed this interpretation should be given
*Chevron* deference. *Chennette*, 50 F.4th at 1238. Even if this standard applied (and,
following *Loper Bright* it should not), Plaintiff does not come close to meeting it.

refers specifically to "residential telephone customers" and separately discusses cell phones. H.R. REP. 102-317, 6; S. REP. 102-178, 1 ("[T]he purposes of the bill are to protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home . . . .").

Critically, when the 2003 Order was adopted—12 years after the TCPA—not even the FCC claimed "residential telephone subscriber" was *intended* in 1991 to cover cell phones. When it sought comment, the FCC asked only "should wireless telephone numbers or a subset thereof be considered 'residential telephone numbers' *for the purposes of the Commission's rules* on telephone solicitations?" *In Re Rules & Reguls. Implementing Tel. Consumer Prot. Act of 1991*, 17 F.C.C. Rcd. 17459, 17485 (2002) (emphasis added). And in its order, it relied not on dictionary definitions, but on policy rationales 12 years after the fact. *See In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003). The FCC was also aware of the problems its unnatural interpretation could cause elsewhere, limiting its interpretation to the TCPA. *Id.* at 14039 n.139.

Plaintiff will no doubt point to the parade of horribles he believes would occur if "residential telephone subscriber" does not encompass cell phones. Plaintiff may argue cell phones have supplanted landlines for many. But modern phone usage cannot alter the TCPA's plain language. The Supreme Court encountered a similar issue in *Duguid*, interpreting the statutory term "automatic telephone dialing

system". *See Duguid*, 592 U.S. at 399.  When faced with the argument that the term

should be interpreted so as to avoid rendering it "senescent", the Court held:

> Duguid's quarrel is with Congress . . . . "Senescent" as a
> number generator (and perhaps the TCPA itself) may be,
> that is no justification for eschewing the best reading of §
> 227(a)(1)(A).

*Id.* at 409 (rejecting that the TCPA should be "treated as an 'agile tool.'").

That the TCPA may consist of anachronistic provisions—indeed, it also

covers fax transmissions—is not cause to alter the statute judicially. As it was in

*Duguid*, Plaintiff's quarrel is with Congress, which remains free to amend the TCPA.

### B. This Court Should Follow Those Authorities Interpreting the Provision at Hand as Applying Only to Residential Lines.

The Sixth Circuit, analyzing the FCC's authority under 47 U.S.C. § 227(c)(1)

to issue regulations explained:

> [T]he TCPA instructs the FCC to issue regulations
> "concerning the need to protect ***residential telephone
> subscribers'*** privacy rights to avoid receiving telephone
> solicitations to which they object." 47 U.S.C. § 227(c)(1).

*Charvat v. NMP, LLC*, 656 F.3d 440, 443 (6th Cir. 2011) (emphasis added); *Charvat*

*v. GVN Michigan, Inc.*, 561 F.3d 623, 629 (6th Cir. 2009) (same).

Some courts within this Circuit, following this explanation, have restricted the

claim at hand to *residential* lines and dismissed claims regarding calls to cell phones.

For example, in *Cunningham v. Rapid Response Monitoring Services*, a Middle

District of Tennessee court evaluated a claim brought under 47 U.S.C. § 227(c)(5)

19

for the alleged violation of 47 C.F.R. § 64.1200(d) regarding calls to a cell phone. *See* 251 F. Supp. 3d 1187, 1210 (M.D. Tenn. 2017). The court adopted the magistrate judge's recommendation of dismissal of the claim brought under § 227(c)(5) on the basis that the plaintiff alleged that the calls were received on his cell phone. *See id.* at 1201.[7] Indeed, the magistrate specifically noted—following the Sixth Circuit's *Charvat v. NMP* case—"[t]he private right of action created by 47 U.S.C. § 227(c)(5) is accordingly limited to redress for violations of the regulations that concern residential telephone subscribers." *Id.* at 1210. The magistrate judge rejected the plaintiff's claim as he only alleged the receipt of calls on his cell phone. *Id.*

Another persuasive analysis can be found in *Turizo v. Subway Franchisee Advertising Fund Trust. See* 603 F. Supp. 3d at 1340-41. The court evaluated the statute and plain language, and determined "[t]he TCPA clearly draws a distinction between cellular telephones and residential telephones." *Id.* at 1340. This distinction was so apparent, the court stated that "by presuming that any wireless number on the DNC Registry qualifies as 'residential,' the FCC expands section 227(c)(5)'s right of action to cellular telephone subscribers—without any congressional grant of authority to do so"—in other words, that the FCC's order was *ultra vires. Id.* at 1341. Though the court determined it was bound, under the Hobbs Act, to accept the FCC's

---

[7]    Albeit the court acknowledged, without deciding the issue, that some courts have included cell phones where there was factual support that the phone was used for residential purposes.

view, the Supreme Court removed this hurdle with *McLaughlin Chiropractic*.[8]

This Court should follow these decisions applying the plain language of the TCPA to determine that the provision at issue does not apply to cellular telephones.

### C. Plaintiff's Authority Should be Disregarded.

Plaintiff will point to cases siding with the FCC's view that a cell phone can be a residential telephone. This Court should find these cases unpersuasive.

At the outset, these cases are largely pre-*Loper* and *McLaughlin Chiropractic*, and thus defer to or even find controlling the FCC's 2003 Order. *See, e.g.*, *Stevens-Bratton*, 437 F. Supp. 3d at 655 (relying on FCC authority); *LaGuardia v. Designer Brands Inc.*, No. 20-cv-2311, 2021 WL 4125471, at *8 (S.D. Ohio Sept. 9, 2021), *on reconsid. in part*, 2022 WL 1121382 (S.D. Ohio Apr. 14, 2022) (same); *Izor v. Abacus Data Sys., Inc.*, No. 19-cv-01057, 2019 WL 3555110, at *2 (N.D. Cal. Aug. 5, 2019); *Buxton v. Full Sail, LLC*, No. 6:24-cv-747, 2024 WL 5057222, at *3 (M.D. Fla. Dec. 10, 2024) (viewing FCC's interpretation controlling). Following *Loper Bright* and *McLaughlin Chiropractic*, this Court should not accept the FCC's 2003 Order as fact; "Courts must exercise their independent judgment . . . ." *Loper Bright*, 603 U.S. at 412. This authority is thus unpersuasive and should not be considered.

---

[8] Myriad others are in accord. *See Cunningham v. Health Plan Intermediaries Holdings*, No. 18-00518, 2021 WL 1946645, at *4 (M.D. Tenn. May 14, 2021); *Gaker v. Q3M Ins. Sols.*, No. 22-00296, 2023 WL 2472649, at *3 (W.D.N.C. Feb. 8, 2023), *R&R*; *Callier v. GreenSky, Inc.*, No. 20-00304, 2021 WL 2688622, at *6 (W.D. Tex. May 10, 2021).

Plaintiff may also point to post-*Loper Bright* decisions finding that the term "residential telephone subscriber" can include cellular telephones. *See, e.g.*, *Cacho v. McCarthy & Kelly LLP*, No. 23-CV-11157, 2024 WL 3293628, at *6 (S.D.N.Y. July 3, 2024); *Lirones v. Leaf Home Water Sols., LLC*, No. 5:23-CV-02087, 2024 WL 4198134, at *6 (N.D. Ohio Sept. 16, 2024); *Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-CV-01569, 2024 WL 184449, at *5 (M.D. Pa. Jan. 17, 2024).

This authority suffers from at least two critical problems. <u>First</u>, these courts draw a false distinction between the term "residential telephone line" (found at 47 U.S.C. § 227(b)) and the term "residential telephone subscriber" found at 47 U.S.C. § 227(c). The argument goes that a "residential telephone subscriber" can logically be read more expansively than "residential telephone line" (a term accepted as describing a landline telephone) such that "the term 'residential subscriber' is indifferent to technology." *Cacho*, 2024 WL 3293628, at *7; *see also Lirones*, 2024 WL 4198134, at *6; *Jackson*, 2024 WL 184449, at *5.  This logic fails to hold water.

The TCPA uses "residential telephone line" and "residential telephone subscriber" not to denote a different reach, but because context requires it. For example, 47 U.S.C. § 227(b) is structured to prohibit persons from using certain technologies to contact certain *lines* (including residential, cellular, hospitals, etc.). On the other hand, 47 U.S.C. § 227(c) is structured to protect certain *subscribers* and permits creation of a national registry to allow certain *subscribers* to register. It

would make little sense to draft 47 U.S.C. § 227(c) to allow inanimate objects to sign up on a national registry. A "residential telephone subscriber" is not intended to have a broader reach than a "residential telephone line", but just to substitute "subscriber" for "line" where the structure of the provision sensibly requires it.

The TCPA carefully distinguishes between residential lines and cellular lines. It makes little sense to have this carefully crafted dichotomy upended by the term "residential telephone subscriber", which courts like *Cacho*, *Lirones* and *Jackson* interpret to encompass all phones used for residential purposes. Courts like *Cacho*, *Lirones* and *Jackson* isolate the word "residential" to somehow mean non-business, irrespective of a *residence*. *See Cacho*, 2024 WL 3293628, at *8; *Lirones*, 2024 WL 4198134, at *6; *Jackson*, 2024 WL 184449, at *5-6. This is untenable. There is no basis to ignore the natural reading that a "residential telephone subscriber" is simply a subscriber to a "residential telephone line." Indeed, what would a "cellular telephone subscriber" be if not a subscriber to a cellular telephone line.

Putting aside the grammatical difficulties, the attempt to distinguish the reach of "residential telephone line" from "residential telephone subscriber" runs into obvious statutory problems. If the term "residential telephone line" in Subsection 227(b) undisputably means a landline, *see Cacho*, 739 F. Supp. 3d at 206, then these courts fail to grapple with Subsection 227(b)'s consent exception. Consent would naturally come from a residential telephone *subscriber*. *See* 47 U.S.C. § 227(b); S.

23

REP. 102-178, 7 ("[T]elemarketers must obtain the express consent of any residential telephone subscriber before placing an automated telephone call to that subscriber . . ."). "Residential telephone subscriber" must then logically refer to a subscriber to a residential telephone line, and not some broad unmoored term to reflect any subscriber using a phone for residential purposes.

Second, courts like *Cacho* make improper policy judgments. For example, *Cacho* viewed the contrary construction as "absurd" because "an individual who eschews landline service and who uses a cellphone exclusively in his residence (perhaps because he is homebound) would be deprived of the TCPA's protection simply because his phone lacks a cord." *Cacho*, 2024 WL 3293628, at *7. The court thought that depriving cellular telephone users of the ability to register on the do-not-call registry "would have sweeping 'practical consequences.'" *Id.* at *6.

At the outset, the TCPA is a 30-plus-year-old statute. It is not absurd that cell phones would have been viewed differently at a time where few (if any) "eschewed" landlines in favor of cell phones—it would be entirely reasonable and expected. *See Loper Bright*, 603 U.S. at 400 (holding a statute's meaning "is fixed at the time of enactment."). Further, the concern in *Cacho* that cell phone users would be deprived of the ability to register their numbers is wrong. *See Cacho*, 2024 WL 3293628, at *6. If the FCC wants to allow cell phone users to register on the do-not-call registry for purposes of administrative efficiency, it presumably may do so. The issue here

is limited to interpreting who has a private right of action under 47 U.S.C. § 227(c) to enforce the do-not-call regulations. Cellular subscribers do not.

More substantively, and as noted above, the Supreme Court addressed and disregarded a nearly identical policy argument in *Duguid* that the TCPA should be viewed as an "agile tool" to address changing technologies, lest there be a wave of unwanted calls. *See* 592 U.S. at 409. Policy goals cannot be used to alter the TCPA's plain language. *See Bais Yaakov*, 852 F.3d at 1083 ("[T]he fact that the agency believes its [rule] is good policy does not change the statute's text."); *Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, 316 (11th Cir. 2025) ("[A]textual good policy cannot overcome clear text."); *Turizo*, 603 F. Supp. 3d at 1341 ("[T]he FCC's assumptions as to congressional intent should not suffice to create an entirely new private right of action for cellular telephone subscribers.")

This Court should adhere to the plain text of the TCPA and the meaning of the term "residential telephone subscriber" as it was written in 1991, irrespective of how technological preferences have shifted over time. This term does not encompass subscribers to cellular telephones; it is up to Congress to expand the TCPA.

## CONCLUSION

For the foregoing reasons, OrthoTech, LLC respectfully requests the Court to (i) dismiss Plaintiff's Complaint with prejudice; and (ii) award all other relief it deems equitable and just.

Dated:　　　August 5, 2025　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　/s/ George B. Donnini
　　　　　　　　　　　　　　　　　David F. DuMouchel (P-25658)
　　　　　　　　　　　　　　　　　George B. Donnini (P66793)
　　　　　　　　　　　　　　　　　**BUTZEL LONG, P.C.**
　　　　　　　　　　　　　　　　　201 West Big Beaver, Suite1200
　　　　　　　　　　　　　　　　　Troy, MI 48084
　　　　　　　　　　　　　　　　　Telephone 248.258.1616
　　　　　　　　　　　　　　　　　Email: dumouchd@butzel.com
　　　　　　　　　　　　　　　　　donnini@butzel.com

　　　　　　　　　　　　　　　　　*/s/ Mark S. Eisen*
　　　　　　　　　　　　　　　　　Mark S. Eisen
　　　　　　　　　　　　　　　　　**BENESCH, FRIEDLANDER,**
　　　　　　　　　　　　　　　　　**COPLAN & ARONOFF LLP**
　　　　　　　　　　　　　　　　　71 South Wacker Drive
　　　　　　　　　　　　　　　　　Suite 1600
　　　　　　　　　　　　　　　　　Chicago, IL 60616
　　　　　　　　　　　　　　　　　Telephone: 312.212.4949
　　　　　　　　　　　　　　　　　Facsimile: 216.767.9192
　　　　　　　　　　　　　　　　　Email: meisen@beneschlaw.com

　　　　　　　　　　　　　　　　　*Counsel for OrthoTech, LLC*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVE MANIACI,

      Plaintiff,

v.

ORTHOTECH, LLC,

      Defendant.

Case No. 25-cv-11138

Honorable Robert J. White

## BRIEF FORMAT CERTIFICATION FORM

I, George B. Donnini, certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1, and Judge White's Case Management Requirements, including the following (click each box to indicate compliance):

☒ the brief contains a statement regarding concurrence, *see* LR 7.1(a);

☒ the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);

☒ the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;

☒ the brief and all exhibits are filed in searchable PDF format, *see* Case Management Requirements § III.A;

☒ except for footnotes and necessary block quotes, the brief is double spaced (<u>not</u> "Exactly 28 pt" spaced) with one-inch margins, *see* LR 5.1(a)(2);

☐ deposition transcripts have been produced in their entirety (<u>not</u> in minuscript), *see* Case Management Requirements § III.A;

☐ if the brief and exhibits total 50 pages or more, I will mail to chambers a courtesy copy with ECF headers, *see* Case Management Requirements § III.B.

I also acknowledge that my brief will be stricken from the docket if the Court later finds that these requirements are not met.


/s/ *George B. Donnini*
George B. Donnini
Attorney for Defendant OrthoTech, LLC