IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| STEVE MANIACI, *on behalf of himself and others similarly situated*,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>ORTHOTECH, LLC,<br><br>　　　　　　　Defendant. | Case No. 2:25-cv-11138-RJW-APP<br><br>Hon. Robert J. White<br>Hon. Anthony P. Patti<br><br>**Oral Argument Requested** |

**DEFENDANT ORTHOTECH, LLC'S REPLY ISO ITS
MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

David F. DuMouchel (P25658)
George B. Donnini (P66793)
**BUTZEL LONG, P.C.**
201 West Big Beaver, Suite 1200
Troy, MI 48084
Telephone 248.258.1616
Email: dumouchd@butzel.com
　　　　 donnini@butzel.com

Mark S. Eisen
**BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP**
71 S. Wacker Drive, Suite 1600
Chicago, Illinois 60606
Telephone: (312) 212-4949
Facsimile: (312) 767-9192
Email: meisen@beneschlaw.com

*Counsel for OrthoTech, LLC*

# **TABLE OF CONTENTS**

Page

ARGUMENT ..................................................................................................2

    I.     A TEXT MESSAGE IS NOT A TELEPHONE CALL........................2

        A.     The Supreme Court Fundamentally Changed the Analysis...................................................................................2

        B.     Plaintiff Errs in Interpreting the term "Telephone Call." ..........................................................................................2

            i.     Plaintiff cites fictional quotes. ..........................................2

            ii.    The Keating decision is neither binding nor persuasive. ........................................................................3

            iii.   Plaintiff misreads the definition of "telephone solicitation." ....................................................3

            iv.   A text message is not a telephone call...............................4

            v.    Section 227(c) is not in any sense a relevant delegation..........................................................................6

    II.    THE TERM "RESIDENTIAL" DOES NOT INCLUDE "CELLULAR."........................................................................................7

        A.     Residential Does Not Mean "Non-Business". ............................7

        B.     The TCPA Distinguishes Residential from *Cellular*. ................................................................................................8

        C.     Plaintiff's Unnatural Reading of Residential Should be Rejected.......................................................................9

CONCLUSION ...............................................................................................9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ACA Int'l v. FCC*,
 885 F.3d 687 (D.C. Cir. 2018)..................................................................................8

*Azar v. Allina Health Servs*,
 587 U.S. 566 (2019)..............................................................................................4, 8

*Bais Yaakov of Spring Valley v. Fed. Commc'ns Comm'n*,
 852 F.3d 1078 (D.C. Cir. 2017)................................................................................4

*Chennette v. Porch.com, Inc.*,
 50 F.4th 1217 (9th Cir. 2022) (Ikuta dissenting)......................................................9

*Davis v. CVS Pharmacy, Inc.*,
 -- F. Supp. 3d --, 2025 WL 2491195 (N.D. Fla. Aug. 26, 2025)..............2, 3, 4, 5

*Facebook, Inc. v. Duguid*,
 592 U.S. 395 (2021).....................................................................................1, 5, 6, 9

*Gentry v. Wayne Cnty.*,
 No. 10-11714, 2014 WL 12656726 (E.D. Mich. Mar. 31, 2014).........................3

*Loper Bright Enters. v. Raimondo*,
 603 U.S. 369 (2024).......................................................................................*passim*

*Ins. Mktg. Coal. Ltd. v. FCC*,
 127 F.4th 303 (11th Cir. 2025) ................................................................................7

*Jones v. Blackstone Med. Servs., LLC*,
 -- F. Supp. 3d --, 2025 WL 2042764 (C.D. Ill. July 21, 2025).........................2, 4

*Keating v. Peterson's Nelnet*,
 615 F. App'x 365 (6th Cir. 2015) ........................................................................2, 3

*Malam v. Adducci*,
 481 F. Supp. 3d 631 (E.D. Mich. 2020) ..................................................................3

*McLaughlin Chiropractic Assocs. v. McKesson Corp.*,
 606 U.S. 146 (2025).......................................................................................1, 2, 3

*Pickens v. Hamilton-Ryker IT Sols., LLC*,
    133 F.4th 575 (6th Cir. 2025) ................................................................................ 6

*Rivera v. Camelot SI*,
    2:25-cv-12827-GAD, Dkt. 9 (E.D. Mich.) ............................................................ 2

*Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*,
    603 F. Supp. 3d 1334 (S.D. Fla. 2022) ................................................................ 8

**Statutes**

15 U.S.C. § 1692a(5) ................................................................................................ 7

47 U.S.C. § 227(a) ............................................................................................... 4, 7

47 U.S.C. § 227(b) ........................................................................................... 4, 5, 7

47 U.S.C. § 227(c) ............................................................................................ *passim*

47 U.S.C. § 227(d) .................................................................................................... 4

47 U.S.C. § 227(e) .................................................................................................... 6

**Other Authorities**

47 C.F.R. § 64.1200(c)(2) ......................................................................................... 3

47 C.F.R. § 64.2305 .................................................................................................. 9

*Tel. Consumer Prot. Act Tel. Solicitations, Autodialed & Artificial or
    Prerecorded Voice Message Tel. Calls, & the Use of Facsimile
    Machines*,
    8 F.C.C. Rcd. 506 (1993) .................................................................................... 11

ii

The only issue before this Court is the scope of the private right of action under 47 U.S.C. § 227(c)(5)—that is, whether it applies to (i) text messages and (ii) cellular telephones. Contrary to Plaintiff's portrayal, this Motion does not seek to upend the TCPA or the availability of the do-not-call registry.

Plaintiff's opposition commits the threshold error of *ignoring* the sea-change the Supreme Court effectuated through its rulings in *Loper Bright* and in *McLaughlin Chiropractic*, which rulings reshaped the ability of this Court to independently interpret the TCPA. Plaintiff thus ignores that the TCPA is to be interpreted as it was written **in 1991**. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) ("That is the whole point of having written statutes; every statute's meaning is fixed at the time of enactment.") (internal quotations and citation omitted). Plaintiff also fails to construe like terms similarly, and reaches wholly unnatural interpretations.

Plaintiff next errs in turning to broad policy rationales. Plaintiff again ignores Supreme Court precedent in doing so. The Supreme Court recently rejected another attempt in the TCPA context to use policy to read the TCPA broadly to reach new technology. *See Facebook, Inc. v. Duguid*, 592 U.S. 395, 409 (2021). Plaintiff's arguments are also self-defeating. By Plaintiff's argument, a "call" is *any* attempt to communicate by phone, encompassing emails and app notifications.

Interpreting the language of the TCPA as Congress wrote it yields only one result—the provision at issue *does not* cover text messages or cellular telephones.

1

# ARGUMENT

## I. A TEXT MESSAGE IS NOT A TELEPHONE CALL.

### A. The Supreme Court Fundamentally Changed the Analysis.

Plaintiff treats the Supreme Court's opinions in *Loper Bright* and *McLaughlin Chiropractic* as though they never happened. This is a fundamental mistake.

The TCPA must be interpreted, as written in 1991, without regard for policy or modern trends. *Loper Bright*, 603 U.S. at 400, 403. And this Court "is not bound by the FCC's interpretation of the TCPA." *McLaughlin Chiropractic Assocs. v. McKesson Corp.*, 606 U.S. 146, 168 (2025). The hurdles of *Chevron* and the Hobbs Act are gone. These rulings enabled the key analyses in *Jones v. Blackstone Med. Servs., LLC*, -- F. Supp. 3d --, 2025 WL 2042764 (C.D. Ill. July 21, 2025), *Davis v. CVS Pharmacy, Inc.*, -- F. Supp. 3d --, 2025 WL 2491195, at 1 (N.D. Fla. Aug. 26, 2025) and *Sayed v. Naturopathica Holistic Health*, 25-00847, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025). This Court should follow these independent analyses.

### B. Plaintiff Errs in Interpreting the term "Telephone Call."

#### i. *Plaintiff cites fictional quotes.*

At the outset, OrthoTech notes that Plaintiff's brief contains multiple phantom quotes from his key cases like *Keating v. Peterson's Nelnet* and *Dobronski v. 1-800-Law-Firm, PLLC* that **do not exist**. (*See* Dkt. 18 at 4, 7.) This raises serious concern. As does the fact that the ***exact same*** brief was subsequently filed by a different attorney in the case *Rivera v. Camelot SI*, 2:25-cv-12827-GAD, Dkt. 9 (E.D. Mich.).

2

### *ii.* *The Keating decision is neither binding nor persuasive.*

Plaintiff relies on the Sixth Circuit decision *Keating v. Peterson's Nelnet*, 615 F. App'x 365 (6th Cir. 2015), referring to it as *binding* precedent. (*See* Dkt. 18 at 3-4, 7.) However, it is neither binding nor persuasive. First, it is not published and is not binding. *See Gentry v. Wayne Cnty.*, No. 10-11714, 2014 WL 12656726, at *4 (E.D. Mich. Mar. 31, 2014). Second, there are many reasons to not find *Keating* persuasive. *See Malam v. Adducci*, 481 F. Supp. 3d 631, 636 (E.D. Mich. 2020). The key issue—whether a text message is a phone call—was *not disputed*.[1] *See Keating*, 615 F. App'x at 370. More substantively, the court found itself bound by *Chevron*. *Id.* This is no longer viable. Finally, *Keating* relies on policy arguments, which the Supreme Court has since heavily discounted. *See Loper Bright*, 603 U.S. at 403.

### *iii.* *Plaintiff misreads the definition of "telephone solicitation."*

Text messaging *did not exist* when the TCPA was passed. *Keating*, 615 F. App'x at 370. Plaintiff nevertheless argues the definition of "telephone solicitation" hid text messages in plain sight for decades. (*See* Dkt. 18 at 7, 10.) Plaintiff is wrong.

It is true that the key regulation, 47 C.F.R. § 64.1200(c)(2), covers "telephone solicitations," and that this term is defined to include "telephone call or message."

---

[1] Plaintiff makes this error throughout his brief. (*See* Dkt. 18 at 5, citing *Campbell Ewald v. Gomez*, 577 U.S. 153, 156 (2016). The reality is that, due to the then-prevailing view of *Chevron* and the Hobbs Act, no one could have disputed an FCC interpretation. *See Davis*, 2025 WL 2491195, at *2 (disregarding *Campbell-Ewald*). That is, of course, no longer an issue post-*Loper* and *McLaughlin*.

3

47 U.S.C. § 227(a)(4). Where Plaintiff errs is that "message"—again, this definition was adopted in *1991*—refers not to text messages, but ***prerecorded voice messages***. *See Jones*, 2025 WL 2042764, at *4 ("Section 227(a)(4) does not refer to 'text message'; 'telephone call or message' could not be interpreted in 1991 to telephone call or text message . . . ."). The term "message" appears throughout the TCPA, elucidating its meaning. *See* 47 U.S.C. § 227(b)(1)(B) (prohibiting certain calls "using an artificial or prerecorded voice to deliver a message . . . ."); 47 U.S.C. § 227(d) (referring to fax messages and "artificial or prerecorded voice messages"); *Azar v. Allina Health Servs*, 587 U.S. 566, 576 (2019) ("[W]hen Congress uses a term in multiple places within a single statute, the term bears a consistent meaning throughout."). Plaintiff's reliance on one word, out of context, is self-defeating.

### iv.     *A text message is not a telephone call.*

A text message was not a telephone call in 1991, nor is it today. *Davis*, 2025 WL 2491195, at *1; *Jones*, 2025 WL 2042764, at *4. Plaintiff's analysis is far afield.

First, Plaintiff argues "[n]othing in § 227(c)(5) limits 'call' to a voice transmission . . . ." (Dkt. 18 at 4.) This strawman theory is nonsensical. *Cf. Bais Yaakov of Spring Valley v. Fed. Commc'ns Comm'n*, 852 F.3d 1078, 1082 (D.C. Cir. 2017) (noting a similar theory "has it backwards . . . ."). The issue is not whether a telephone call must include a voice, but whether a text message is a telephone call. It is not; these are two different forms of communication. *See Davis*, 2025 WL

4

2491195, at *1. Were it as Plaintiff argues, most modern communication—an app-to-app message, a push notification—would all qualify as a telephone call.[2]

Second, Plaintiff's reliance on 47 U.S.C. § 227(b)'s coverage of *calls* to a paging service is similarly misplaced. (*See* Dkt. 18 at 5, 15.) That a separate subsection of the TCPA covers calls to a paging service—which requires an actual telephone call—matters not. *See, e.g.*, *Davis*, 2025 WL 2491195, at *2 (noting the distinction in statutory subsections 227(b) and 227(c)(5)). Indeed, it highlights the TCPA was not drafted to encompass future technologies. *See, e.g.*, *Duguid*, 592 U.S. at 409 (rejecting broad interpretation of a "senescent" TCPA statutory term).

Third, Plaintiff analogizes to older statutes applying to new technologies, arguing that statutes can apply beyond the specific application envisioned at the time of enactment. (Dkt. 18 at 11.) True as that may be, Plaintiff is not merely asking to apply the TCPA to evolving technology, he is asking for a new private right of action. The apt analogy here would be applying the TCPA to the iPhone. While telephones have evolved since 1991, the meaning of a telephone call has not. A text message was not a telephone call then, and it is not now. *See Davis*, 2025 WL 2491195, at *1. The Supreme Court already provided a roadmap here in *Duguid*, which rejected substantively identical policy arguments, holding that the plaintiff's

---

[2] Plaintiff argues Subsection 227(c)(5) cannot have a narrower interpretation than the "regulations it exists to enforce . . . ." (Dkt. 18 at 14.) This is backwards. Subsection 227(c)(5) preceded the regulations at issue by more than a decade.

5

"quarrel is with Congress, which did not define an autodialer as malleably as he would have liked." *Duguid*, 592 U.S. at 409. The same is unmistakably true here.

Fourth, Plaintiff fails to appreciate the TCPA's subsequent amendment to cover text messages. *See* 47 U.S.C. § 227(e). Plaintiff asserts that Section 227(e) portrays a "'text message' as something that is done by a 'caller,' just like a traditional voice call is." (Dkt. 18 at 17.) This is completely invented. Section 227(e) does not use the word "caller" in this manner. It speaks to "caller identification services," which in turn is defined referring to "<u>a call made using a voice service **or** a text message sent using a text messaging service</u>." 47 U.S.C. § 227(e)(8)(A) (emphasis added). This proves that a call and a text message are entirely separate.

Fifth, Plaintiff relies on perceived policy goals. (*See* Dkt. 18 at 6.) Policy, however, cannot overcome the plain text of the statute. *See Duguid*, 592 U.S. at 409. It cannot be, as Plaintiff argues, that a "call" includes "any attempt to communicate by telephone," (Dkt. 18 at 3), which would encompass all modern communication.

### v.   Section 227(c) is not in any sense a relevant delegation.

Plaintiff's final argument is that 47 U.S.C. § 227(c) provides a delegation of authority to the FCC that this Court must respect. (Dkt. 18 at 18-19.) The delegation to which Plaintiff refers occurs where the statute "expressly delegates to an agency the authority to give meaning to a ***particular statutory term***." *Loper Bright*, 603 U.S. at 394 (cleaned up, emphasis added); *Pickens v. Hamilton-Ryker IT Sols., LLC*, 133

F.4th 575, 588 (6th Cir. 2025) (same). The problem for Plaintiff is that 47 U.S.C. § 227(c) provides authority to craft do-not-call provisions. It *does not* provide authority to redefine a "telephone call." *See, e.g.*, *Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, 312 (11th Cir. 2025) (noting "implement" does not mean "alter").

## II.     THE TERM "RESIDENTIAL" DOES NOT INCLUDE "CELLULAR."

### A.     Residential Does Not Mean "Non-Business."

The TCPA uses the term "business subscriber" once, within the definition of an "established business relationship." 47 U.S.C. § 227(a). This is noteworthy for two reasons. First, this definition was adopted in 2005, 14 years after the provision at hand. *See* PL 109–21, July 9, 2005, 119 Stat 359. Second, it only applies to faxes, which ***require a landline*** by definition. 47 U.S.C. § 227(a)(3). To that end, it uses "business subscriber" and "residential subscriber" both in relation to landlines.

The TCPA includes no other use "business" in contrast to "residential." Indeed, Section 227(b) specifically includes the terms (i) residential, (ii) cellular and (iii) business. *See* 47 U.S.C. § 227(b)(1)(A), (B), (D). Section 227(c) speaks to the need for potential protections for "small businesses." *Id.* § 227(c)(1)(C). The term "residential" is not used in the TCPA as a stand-in for the "non-business" (though business lines are also not residential).[3] It is, however, contrasted with cellular.

---

[3] Where Congress seeks to separate personal and business, it does so. *See* 15 U.S.C. § 1692a(5) (defining debt "primarily for personal, family, or household purposes").

7

### B.  The TCPA Distinguishes Residential from *Cellular*.

Plaintiff acknowledges Section 227(b) *separately* regulates residential from cellular lines. (Dkt. 18 at 23.) Plaintiff nevertheless asserts that Section 227(c) has different reach, and thus "residential" must have a different meaning. (*Id.*) This is despite Plaintiff's argument with respect to the term "call" that it must be interpreted the *same* in 227(b) and 227(c). (*Id.* at 16.) Plaintiff cannot have it both ways.

Section 227(b) is drawn with respect to technology, and Section 227(c) is drawn with respect to privacy interests, but this simply does not explain why the term "residential" in Section 227(b) would carry a different, more narrow meaning. Much to the contrary, the same term in the same statute should carry the same meaning. *See Azar v. Allina Health Servs*, 587 U.S. 566, 576 (2019).

The TCPA plainly distinguishes cellular from residential. *See ACA Int'l v. FCC*, 885 F.3d 687, 713 (D.C. Cir. 2018) ("Even if one might hypothesize important reasons for treating residential and wireless telephone lines the same, the TCPA itself presupposes the contrary—that calls to residential and wireless numbers warrant differential treatment.") (citation omitted); *Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*, 603 F. Supp. 3d 1334, 1340 (S.D. Fla. 2022) (same). Plaintiff fails to explain why Congress would take great pains to separate cellular from residential in 227(b), and then inartfully merge the two in 227(c). It is thus a more appropriate conclusion that Section 227(c) intentionally *omits* cellular subscribers.

8

### C. Plaintiff's Unnatural Reading of Residential Should be Rejected.

Plaintiff—and the cases he cites, many of which OrthoTech analyzed in its Motion—ignores the best reading of the term. "Residential" is not metaphorical, disconnected from a "residence." (*See* Dkt 18 at 21.) "Residential" simply "mean[s] of, relating to, or connected with residence or residences. . . . Thus, a 'residential telephone' is by its terms a telephone connected with a residence." *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1233 (9th Cir. 2022) (Ikuta dissenting) (cleaned up).

What Plaintiff is then left with, and what his cases turn to, are policy grounds. Plaintiff and his cases come up with a wholly unnatural reading of "residential," motivated by policy goals. (*See* Dkt. 18 at 22-24.) That is, however, no basis "for eschewing the best reading of" the term. *Duguid*, 592 U.S. at 409. A "residential telephone subscriber" is simply a subscriber to a residential telephone line. The alternative begs the question of what a "cellular telephone subscriber" would be.[4]

The TCPA separates "residential" from "cellular." It is for Congress and not Plaintiff to amend the TCPA to account for modern trends. *Duguid*, 592 U.S. at 409.

### **CONCLUSION**

For the reasons detailed herein and in OrthoTech's Motion, this Court should dismiss Plaintiff's Complaint with prejudice for failure to state a claim.

---

[4] Plaintiff's reliance on 47 C.F.R. § 64.2305 is misplaced. This regulation pertains not to the TCPA, was issued years after the TCPA was passed and could not (of course) express the intent of *Congress*.

9

Dated:       October 31, 2025          Respectfully submitted,

/s/     David F. DuMouchel
David F. DuMouchel (P25658)
George B. Donnini (P66793)
**BUTZEL LONG, P.C.**
201 West Big Beaver, Suite1200
Troy, MI 48084
Telephone 248.258.1616
Email: dumouchd@butzel.com
            donnini@butzel.com

/s/ *Mark S. Eisen*_____
Mark S. Eisen
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
71 South Wacker Drive
Suite 1600
Chicago, IL 60616
Telephone: 312.212.4949
Facsimile: 216.767.9192
Email: meisen@beneschlaw.com


*Counsel for OrthoTech, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2025 I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification to counsel of record.

/s/     David F. DuMouchel
David F. DuMouchel (P25658)